STATE EX REL. SARNOWSKI, Respondent, v. Fox, Appellant.

*January 9—February 5, 1963.*

For the appellant there was a brief and oral argument by *John E. Esler* of Kaukauna.

For the respondent there was a brief and oral argument by *George W. Radtke,* assistant district attorney of Winnebago county.

DIETERICH, J.   Complainant and defendant met sometime in October of 1959, at a teen-age tavern near the village of

Combined Locks, Wisconsin. At that time complainant was living in or near Sherwood, Wisconsin, on a farm. In June of 1960, complainant moved to a home in Neenah and in July to a second home in the same city.

The testimony of the complainant and defendant is that they saw each other from time to time and that on many of these occasions they had intimate relations. Their testimony, however, differs as to the last time they were together. The complainant testified that the last time they had any relations was August 2 or 3, 1960, while the defendant testified that the last time they had intimate relations was sometime in the middle of June, 1960.

The rule in paternity proceedings is well defined in *State ex rel. Kapusta v. Weir* (1960), 12 Wis. (2d) 96, 99, 106 N. W. (2d) 292, in which this court stated:

"In *State ex rel. Kurtz v. Knutson* (1958), 5 Wis. (2d) 609, 611, 93 N. W. (2d) 348, this court stated:
" 'In illegitimacy proceedings the testimony of the complaining witness that she had timely intercourse with the defendant and that she had none with anyone else is sufficient to support a verdict that the defendant is the father of her child, if the jury believed it. *Wille v. State ex rel. Kessler*, 192 Wis. 224, 212 N. W. 260; *State v. Willing*, 259 Wis. 395, 48 N. W. (2d) 236.' "

Defendant-appellant raises these issues on this appeal:

1. Whether certain incidents which occurred during the trial constituted prejudicial error:
(a) Presence of baby in courtroom before trial;
(b) Complainant's comingling with jurors;
(c) Cross-examination of defendant as to earnings and assets;
(d) Two misstatements of law made to jury by prosecution in final argument.
2. Whether a new trial should be granted on the basis of newly discovered evidence and in the interest of justice.

## 1 (a). *Presence of Baby in Courtroom.*

The affidavit by counsel for defendant in support of a motion for a new trial recites the following:

"The complaining witness was allowed to sit across the aisle from a panel of jurors prior to the impaneling of the jury; and that for a period of more than ten minutes, the complaining witness held the child in her arms and during a good share of the time, actually held the child in the air facing the jury panel, during which time the child was fussing and crying so that it attracted the attention of every juror present; that on the basis of a conversation that this affiant had with one of the jurors, who served on the jury, the appearance of the child was discussed with the jurors in their deliberation of this matter."

The record is barren of any of the facts related in the affidavit of defendant's counsel prior to the case having been submitted to the jury. However, discussion based upon the contents of the affidavit was had between counsel in the court at the hearing on the motion for a new trial.

A statement of the Wisconsin law on this subject is made in Anno. 40 A. L. R. 97, 145, to wit:

"Thus, while it is held in Wisconsin that it is highly improper to exhibit a child to prove its paternity by resemblance (*Hanawalt v. State*) [(1885), 64 Wis. 84], it was held in *Johnson v. State* [(1907), 133 Wis. 453], a bastardy case in which the prosecutrix held her child while testifying, that, since there was no attempt to offer the baby in evidence or to exhibit it to the jury, there was no error."

In 7 Am. Jur., Bastards, p. 706, sec. 126, it is stated:

"PRESENCE OF CHILD IN COURT.—Irrespective of whether profert may be made of the bastard child to the jury or whether testimony of witnesses may be received as to its resemblance or nonresemblance to the defendant, the mere presence of the child in court is not prejudicial error to the defendant, when no profert of such child is made, or offered

to be made to the jury, and no reference to it, or its presence, is made by counsel to the jury." [1]

The facts as related in this case are that the child was removed from the courtroom before the jury was made aware of the nature of the case and never returned to the courtroom during the trial. Under these circumstances the child's presence in the courtroom before trial commenced does not constitute reversible error.

1 (b). *Comingling with the Jurors.*

The affidavit by counsel for defendant in support of a motion for a new trial also states:

"That following a recessing of the trial at noon on the day of trial, the complaining witness left the courtroom in a fashion so as to comingle with the jurors leaving the jury box, during which time she smiled and nodded to members of the jury."

Counsel for defendant does not contend, nor does the record reveal, that any objection was made to the conduct of the complainant.

This court stated in *Wetzler v. Glassner* (1925), 185 Wis. 593, 598, 201 N. W. 740:

"If the defendant felt that the occurrence complained of was prejudicial to his rights, it was his duty to have the same brought immediately to the attention of the court. To take advantage of the verdict if it is in his favor and to attack its efficacy if it is against him is to attempt to speculate for his own benefit upon the outcome of the proceedings. Where misconduct or improprieties are brought to the attention of counsel during the course of the trial, it is the duty of counsel to immediately present the matter to the court if it is deemed to be in any way prejudicial."

---

[1] See also 7 Am. Jur., Bastards, p. 652, sec. 37, MERE PRESENCE OF CHILD IN COURT OR ON STAND.

If defendant had made timely objections to the comingling with the jury by complainant, the trial court would have had the opportunity to exercise its discretionary power to order a mistrial. On oral argument before this court the incident complained of was discussed by counsel. It is apparent from the statements made during the argument that the complainant left the courtroom through a side entrance with her counsel at the noon recess and proceeded to an adjacent room where complainant's father was caring for her child. The jury also exited from the courtroom at this time and complainant, according to counsel for defendant, nodded and smiled to members of the jury. It is not contended that any conversation passed between any juror and complainant.

The evidence before this court clearly indicates that though complainant's conduct was improper, it did not tend to create bias or prejudice in the minds of the jurors. It should be remembered that the jury and complainant were in fairly close proximity throughout the trial. Complainant testified and we can safely assume that a certain amount of this testimony was directed to the jury and accompanied by facial animation. Under the circumstances, we do not find grounds for granting a new trial in the interests of justice for the reasons of the minor impropriety of complainant when she momentarily, while leaving the courtroom, comingled with and smiled and nodded at members of the jury.[2]

## 1 (c). *Cross-examination.*

Counsel for defendant contends that certain cross-examination which elicited testimony from defendant as to his earnings and assets was improper and prejudicial. However, timely objections to some of this testimony were not made at the trial. Defendant's financial condition was fairly well

---

[2] Anno. 62 A. L. R. (2d) 298, Juror-contact with party or counsel. See also *Wetzler v. Glassner, supra,* and 39 Am. Jur., New Trial, p. 111, sec. 96; 39 Am. Jur., New Trial, p. 113, sec. 99.

established before any objection was made to the relevancy of the questions.

Counsel for complainant: "Q. How much money do you make a week? A. About $80.

"Q. Do you own your home? A. No, sir.

"Q. Do you have any other assets outside of your income, your weekly income from work? A. No, sir.

"Q. How much do you think lying-in expenses and hospital costs are for a child, normal birth? A. About $230."

Counsel for defendant: "May it please the Court, I don't particularly object to this but I think we may be getting a little irrelevant and far afield."

The Court: "He testified he had some idea, I suppose the district attorney can find out what that idea was. Objection overruled."

Counsel for defendant: "Withdraw the objection."

The Court: "Objection withdrawn. Would you read the last question and answer."

Counsel for complainant: "Q. Did you have that amount of money available at the time that she had agreed to it?"

Counsel for defendant: "I object to that as being irrelevant. . . ."

The Court: "Objection overruled. You may answer the question."

Counsel for complainant: "Q. Did you have the $230 or $240 to pay the hospital expenses and lying-in expenses? A. Yes, I have.

"Q. Did you have at that time? A. Yes, I did.

"Q. You testified just a few questions ago the fact the only assets you have is the amount of money you get per week from the work that you do? A. Yes, sir.

"Q. Where did this other money come from then? A. In the bank.

"Q. You had it in the bank? A. Yes."

Counsel for defendant: "For the sake of the record I want to object to that last question and any further questions of a similar nature. . . ."

The Court: "The motion to have the last question and answer stricken is denied. It will stand."

What the defendant earns or has in the bank, of course, is irrelevant to the issue of paternity. All testimony after defendant's counsel made his first objection should have been stricken. However, such testimony cannot be regarded as unduly prejudicial to defendant in view of the prior testimony of his financial condition to which no objections were interposed.

### 1 (d). *Misstatements of Law.*

Final arguments by the respective attorneys in this action were not recorded. No transcript of their final argument is therefore available to this court on appeal. Defendant's counsel attempts by affidavit, in support of motions for a new trial after verdict, to establish what transpired on the argument as follows:

"That the prosecuting attorney made at least two misstatements to the jury which constituted misstatements of law; that this affiant made no objection at the time for the reason that he felt that the matters and statements as to law might well be covered by the court's instructions; while the court's instructions were accurate and completely correct, they did not cover the misstatements in question. The misstatements are as follows:

"(a) The state has met its burden of proof by showing that the defendant had access to the complaining witness over the period in question.

"(b) That the father of the complaining witness would be guilty of perjury if his statement as to when he moved to a house in Neenah was incorrect."

It is the law in this state that any questions concerning the propriety of an attorney's final argument must be determined by the trial court at the time the allegedly improper statements are made. In that way a record is made upon which an appeal can be taken. This court will not, as in this action, entertain questions which must be determined upon affidavits which attempt long after trial to make a "record" of error

committed during the trial. *Schultz v. Miller* (1951), 259 Wis. 316, 48 N. W. (2d) 477.

## 2. *Newly Discovered Evidence.*

Defendant's defense was based on the premise that he did not see complainant during July, but ceased his relations with her in June—more than three hundred days before the birth of the child.[3]

Andrew Sarnowski, complainant's father, testified that he bought a house in Neenah and moved to it on July 9th without indicating that he and his family had lived in Neenah in June. His testimony is as follows:

"*Q.* Now, have you ever seen Mr. Fox at your residence in Neenah? *A.* At my residence in Neenah, yes.

"*Q.* Well, will you tell me on how many and on what occasions this was? *A.* Well, at this one residence that I live at now was—this is right after we had moved into the house, around the 9th of July we moved in there, was a couple of weeks after and he brought my daughter home that one night.

"*Q.* On how many occasions have you met or seen Mr. Fox? *A.* Well, I have seen him at the house in Sherwood and I have seen him at that house over on Nicolet boulevard, and I saw him again at that house on Nicolet boulevard when we went to see Father Koch."

Defendant admitted that he had been at complainant's home in Neenah once or twice and was apparently of the impression

---

[3] Sec. 328.395. "PRESUMPTION AS TO TIME OF CONCEPTION. In any paternity proceeding, where the child whose paternity is at issue weighed five and one-half pounds or more at the time of its birth, the testimony of the mother as to such weight shall be presumptive evidence that the child was a full-term child, unless competent evidence to the contrary is presented to the court. The conception of such child shall be presumed to have occurred within a span of time extending from two hundred forty days to three hundred days before the date of its birth, unless competent evidence to the contrary is presented to the court."

that the only home complainant's family occupied in Neenah was the second. His testimony was, to wit:

"*Q.* Near Sherwood. Would you know where she next lived, the complaining witness? *A.* I think where they live now in Neenah. [The home to which they moved on July 9th.]"

Counsel for defendant in his affidavit in support of his motion for a new trial states that it was not until after the trial was over that he discovered that complainant's family had lived in two houses in Neenah, one in June and another from July onward and on that basis defendant should be granted a new trial on this newly discovered evidence.

In *Hoffman v. Buggs* (1959), 6 Wis. (2d) 488, 491, 95 N. W. (2d) 237, this court stated:

"The appellant submits further that the trial court should have granted a new trial because of newly discovered evidence.

" 'The granting of a new trial on the ground of newly discovered evidence rests within the sound discretion of the trial court and its determination will not be set aside unless it is shown to be a clear abuse of such discretion.' *Estate of Teasdale* (1953), 264 Wis. 1, 7, 58 N. W. (2d) 404.

"That case, at page 4, sets out the requirements which must be met before a new trial on this ground will be granted. They are:

"(1) The evidence must have come to the moving party's knowledge after the trial.

"(2) The moving party must not have been negligent in seeking to discover it.

"(3) The evidence must be material to the issue.

"(4) The testimony must not be merely cumulative to the testimony which was introduced at the trial.

"(5) It must be reasonably probable that a different result would be reached on a new trial."

We determine that the trial court did not abuse its discretion when it refused to grant a new trial to defendant on the

basis of newly discovered evidence because it is not reasonably probable that a different result could be reached on a new trial.

*By the Court.*—Judgment affirmed.