**James Edward FARLEY, Petitioner,**

v.

**W. R. NELSON, Warden, F. C. I., Danbury, Connecticut, Respondent.**

**Civ. No. B–78–284.**

United States District Court, D. Connecticut.

Feb. 15, 1979.

---

Andrew B. Bowman, Federal Public Defender, New Haven, Conn., for petitioner.

Richard Blumenthal, U. S. Atty., Diana Garfield, Asst. U. S. Atty., New Haven, Conn., Cheryl Wattley, Law Clerk, for respondent.

## MEMORANDUM OF DECISION

DALY, District Judge.

Petitioner in this habeas corpus action seeks to be released from federal custody. The nature of his claim is best understood in its factual context. In 1974, petitioner was paroled from the custody of the State of Maryland. At that time, detainers concerning two unserved federal sentences

were on file with the State of Maryland, but petitioner was not taken into custody by federal authorities. In 1976, petitioner was rearrested by state authorities for parole violation, and was returned to an institution in the State of Maryland. After his rearrest he received an additional state sentence for an offense committed while on parole. In May, 1978, petitioner was paroled by Maryland, and was taken into custody by federal authorities to begin serving his unserved sentences.

Petitioner claims that the United States waived jurisdiction over him by failing to take him into custody at the time of his release from state custody in 1974. Alternatively, he seeks credit on his federal sentence for the time between his release in 1974 and the date on which he was taken into federal custody.

As the following findings of fact indicate, petitioner's claim hinges upon a telephone call made by an employer of Maryland's Patuxent Institution to the United States Marshal's Office in Baltimore prior to petitioner's release in 1974. Petitioner contends that as a result of this telephone conversation the United States waived jurisdiction over him or misled him to his detriment, thereby entitling him to credit on his federal sentences. The present proof, however, is inadequate to support this claim, and this petition must be denied.

## FINDINGS OF FACT

(1) Petitioner, James Farley, was an inmate at the Federal Correctional Institution (FCI), Danbury, at the time he filed this petition.

(2) On May 15, 1968, in the Circuit Court for Anne Arundel County, Maryland, petitioner was found guilty of breaking and entering and was sentenced to "a period of six years to run consecutive with any sentence now being served." Petitioner has completed service of this sentence.

(3) On June 17, 1968, petitioner pleaded guilty to a charge of attempting to break and enter a United States Post Office in violation of 18 U.S.C. § 2115, and to a charge of conspiring to commit that offense

in violation of 18 U.S.C. § 371. Petitioner was sentenced to four years for the conspiracy charge and three years for the underlying offense, these terms to run concurrently with each other and with the state sentence being served by petitioner. Petitioner was committed to the custody of the State of Maryland for the purpose of serving these sentences, and petitioner has completed service of these sentences.

(4) On October 16, 1969, petitioner, having pleaded guilty to a charge of escape of a federal prisoner in violation of 18 U.S.C. § 751(a), was sentenced by Judge Watkins, United States District Judge for the District of Maryland, to a term of three years, "service of sentence to begin at the expiration of currently existing outstanding sentences." After being sentenced on this charge, petitioner was returned to the custody of the State of Maryland to continue the service of his prior state and federal sentences. This three-year sentence for escape is one of the sentences providing the basis for petitioner's current custody.

(5) On December 9, 1960, petitioner, having pleaded guilty in the Criminal Court of Baltimore to a charge of robbery with a deadly weapon, was sentenced to ten years with credit to be given from May 15, 1978. This sentence was to run concurrently with the other sentences being served by petitioner.

(6) On February 6, 1970, a judge for the Criminal Court of Baltimore ordered that petitioner be committed to the Patuxent Institution in Jessup, Maryland for examination.

(7) During February, 1970, when petitioner was actually transferred to Patuxent, there was in the institutional file accompanying him a letter from Frank Udoff, United States Marshal, District of Maryland, dated October 22, 1969, addressed to Warden, Maryland House of Correction, Jessup, Maryland. That letter stated:

Enclosed is a copy of a Judgment and Commitment for the above subject. On October 16, 1969, Farley was sentenced to 'three (3) years; service of sentence to

begin at the expiration of currently existing outstanding sentences.' Our detainer dated September 12, 1969, is presently on file with you for Farley.

Kindly advise whenever the State is ready to release Farley to us based on our detainer.

(8) In July of 1970, petitioner pleaded guilty in federal court for the Eastern District of Pennsylvania to a charge of possession of a firearm by a convicted felon in violation of 18 U.S.C. App. § 1202(a). After entering this plea, and without being sentenced, petitioner was returned to Patuxent.

(9) On or about October 12, 1970, Patuxent received a federal detainer concerning the charge referred to in (8), above.

(10) In September, 1970, petitioner was transported back to Pennsylvania, and on November 2, 1970, was sentenced to a term of "one year to run consecutively to any term of imprisonment defendant is now serving or any imprisonment defendant will serve in the future because of any detainers or any criminal charges which are now pending."

(11) In January, 1971, petitioner was adjudged a "defective delinquent" under a Maryland statute. This classification resulted in a suspension of the ten-year sentence for robbery referred to in (5), above, which sentence was replaced by a commitment to Patuxent for an indefinite term.

(12) David McGlaughlin was petitioner's counsellor and social worker at Patuxent in 1974. It was McGlaughlin's duty to act as a liaison between petitioner and the outside world and to assist the Patuxent administration in planning for petitioner's release.

(13) Petitioner was first considered for parole by Patuxent in June, 1974. A release plan was developed that involved vocational training at Airco Technical Institute in Baltimore and eventually release on parole to a halfway house in Baltimore.

(14) In July or August of 1974, McGlaughlin, in connection with the implementation of petitioner's release plan, and pursuant to a request by the Patuxent Board of Review, telephoned the United States Marshal's Office in Baltimore to discuss the detainers that had been lodged against petitioner. This was the first time McGlaughlin ever had been asked to contact the Marshals concerning detainers.

(15) McGlaughlin spoke to a man at the Marshal's office but can remember neither the man's name nor the substance of the conversation. McGlaughlin recalls only that he felt "satisfied" that Patuxent's plans to release petitioner would not be disrupted due to the detainers. He also recalls having some concern at that time that petitioner might encounter some difficulty in the future as a result of these detainers.

(16) McGlaughlin made no written record of this conversation.

(17) At the time McGlaughlin contacted the Marshal's office, the Patuxent Board of Review had expressed to McGlaughlin its opinion that petitioner's release to Patuxent's halfway house would not end Patuxent's custody of petitioner, and that Patuxent, therefore, might not be required to contact the Marshals concerning the detainer. If the man to whom McGlaughlin spoke had agreed with this interpretation of the state's jurisdiction, McGlaughlin would have been satisfied that the detainers would not disrupt Patuxent's plans to release petitioner.

(18) The only contact in 1974 by Patuxent authorities with the United States Marshal's Office concerning petitioner was the telephone call made by McGlaughlin. The Marshal's office never was notified of the specific date of petitioner's release or, for that matter, the fact that petitioner would be released at all.

(19) Based on what petitioner was told by McGlaughlin concerning the phone conversation with a man at the Marshal's office, petitioner reasonably believed that he would not be expected to begin serving any part of the one-year sentence referred to in (10), above, upon being released from Patuxent. He also reasonably believed that he would not at any time be expected to do

any more time on the three-year sentence referred to in (4), above.

(20) Petitioner never had any direct contact with a federal authority concerning the detainers. Petitioner's understanding as to the effect of the detainers was based upon communications from McGlaughlin, a state employee.

(21) On December 12, 1974, petitioner was paroled from Patuxent and placed in a halfway house in Baltimore.

(22) The Patuxent Board of Review would not have released petitioner in December of 1974 if McGlaughlin had reported that the marshals intended to execute the detainers upon such release.

(23) In late March or early April of 1975, petitioner absconded from parole supervision. A parole violator warrant was issued in April, 1975. Petitioner was arrested by Maryland authorities on March 25, 1976. Approximately fifteen months had passed from the date of petitioner's release on parole from Patuxent, and approximately 12 months had passed from the date petitioner had absconded from parole supervision.

(24) On April 7, 1976, having been convicted in Maryland state court on charges of possession of a firearm by a felon, petitioner received an aggregate five-year sentence to be concurrent with the remainder of petitioner's earlier outstanding state sentence, referred to in (5) and (11), above. Petitioner was returned to Patuxent.

(25) Prior to July 7, 1977, Maryland's "defective delinquent" statute was repealed. On July 7, 1977, petitioner appeared before the state court and the balance of his ten-year sentence, referred to in (5), (11), and (24), above, was reimposed. Petitioner was returned to Patuxent, and began service of the balance of this ten-year sentence and the balance of the aggregate five-year sentence referred to in (24), above.

(26) On May, 8, 1978, petitioner was paroled by Patuxent to meet the federal detainers, referred to in (7) and (9), above. The Marshal's office had been contacted by Patuxent authorities and had been in-

formed that petitioner would be released on May 8, 1978.

(27) Prior to May 8, 1978, petitioner had no personal contact with federal authorities concerning the status of his outstanding detainers.

(28) On May 23, 1978, after having been brought by United States Marshals to Baltimore City Jail and then to Lewisburg Penitentiary, petitioner was transferred to the Metropolitan Correctional Center (MCC) in New York.

(29) While at the MCC, petitioner, believing that he was being held only on the one-year sentence referred to in (10), above, filed a BP-9 with the unit manager. Petitioner claimed that he had completed service of the sentence on which he was being held.

(30) On June 7, 1978, before receiving an answer to his BP-9, petition was transferred to the Federal Correctional Institution in Danbury, Connecticut.

(31) After arriving at Danbury FCI, petitioner learned that he was being held on both the one-year sentence referred to in (10), above, and the three-year sentence referred to in (4), above, or an aggregate four-year sentence. He also learned that it would be six weeks before an official computation of his sentence would be complete.

(32) While at Danbury; and before filing this petition, petitioner filed another BP-9 claiming that he had finished serving both the one-year and three-year sentences.

(33) Petitioner was notified of the denial of the BP-9 filed in Danbury prior to the time he filed this petition. He did not receive notification of the denial of his prior MCC BP-9 until after he filed this petition.

(34) Petitioner was not fully aware of the appeal remedies open to him upon the denial of his Danbury BP-9, and reasonably believed, after the filing of this petition, when he did become aware of the appeal remedies, that his filing of this petition obviated the necessity to appeal the denial of his BP-9 through administrative channels.

(35) Petitioner has not exhausted his administrative remedies.

## CONCLUSIONS OF LAW

■ 1. This case presents exceptional circumstances permitting this Court to entertain this petition on its merits despite petitioner's failure to exhaust administrative remedies. These circumstances exist in that

   a. if petitioner's contentions were correct, he might be entitled to immediate release from federal custody;

   b. due to the mechanics of his transfer from Patuxent to FCI, Danbury, petitioner's ability to present his claims was hampered and he experienced justifiable frustration in his good-faith attempts to resolve his situation;

   c. petitioner filed this petition in good faith and did not intentionally bypass administrative remedies;

   d. petitioner's claim is not frivolous; and

   e. these proceedings, through no fault of petitioner, have sufficiently been delayed that a refusal by this Court at this point in time to consider the merits of this petition would be inequitable.

■ 2. Despite the language in the sentencing order issued by Judge Watkins to the effect that "service of sentence (is) to begin at the expiration of currently existing outstanding sentences," petitioner's three-year federal sentence for escape did not begin at the expiration of the six-year state sentence in effect at the time Judge Watkins imposed the three-year sentence. When a federal, consecutive sentence is imposed upon a person in state custody, and the state subsequently imposes additional sentences and requires service of those sentences, the consecutive federal sentence does not begin until the prisoner is taken into federal custody. *Anderson v. U. S.,* 405 F.2d 492 (10th Cir. 1968), *cert. denied,* 394 U.S. 965, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); *U. S. v. Ayscue,* 187 F.Supp. 946 (E.D.N.C.), *aff'd* 287 F.2d 887 (4th Cir. 1960).

■ 3. The facts in this case fail to establish that the United States waived jurisdiction over the petitioner. There was no federal government action "so affirmatively wrong" or "so grossly negligent" that it would be inconsistent with fundamental principles of liberty and justice to require service of the federal sentences. *Compare Shields v. Beto,* 370 F.Supp. 1003 (5th Cir. 1967) *and Lanier v. Williams,* 361 F.Supp. 944 (E.D.N.C.1973) *with Piper v. Estelle,* 485 F.2d 245 (5 Cir. 1973); *Bailey v. Ciccone,* 420 F.Supp. 344 (W.D.Mo.1976); *Todd v. Wilson,* 310 F.Supp. 1025 (W.D.Mo.1970); *and United States v. Vann,* 207 F.Supp. 108 (E.D.N.Y.1962).

■ 4. The facts in this case fail to establish that petitioner is entitled to credit on his federal sentences. There was no act on the part of any federal authority that resulted in petitioner's being out of federal custody, through no fault of his own, at a time when he should have been in federal custody. *See Smith v. Swope,* 91 F.2d 260 (9th Cir. 1937); *White v. Pearlman,* 42 F.2d 788 (10th Cir. 1930); *Esquivel v. Estelle,* 426 F.Supp. 619 (W.D.Tex.1976); *Stetson v. Mahoney,* 42 F.Supp. 298 (E.D.Wash.1942).

■ 5. Petitioner's service of his federal sentences did not begin until he was released into the custody of the United States Marshals on May 8, 1978. 18 U.S.C. § 3568.

6. This petition for a writ of habeas corpus is denied.

It is so Ordered.