James **ROCHE**

v.

**G. H. SIZER, Warden, Federal Correctional Institution, Danbury, Connecticut; the United States Parole Commission, and William French Smith, Attorney General of the United States.**

Civ. No. B–81–176.

United States District Court,
D. Connecticut.

May 20, 1981.

John L. Pottenger, Jr., Blair Dorminey, Jerome N. Frank, Legal Services Organization, Yale Law School, New Haven, Conn., for petitioner.

Richard Blumenthal, U.S. Atty., Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., for respondents.

## MEMORANDUM OF DECISION

ELLEN BREE BURNS, District Judge.

Petitioner James Roche, currently incarcerated in the Federal Correctional Institution at Danbury, filed this application for a writ of habeas corpus on April 8, 1981. On April 22, 1981, this Court's April 14, 1981, Order to Show Cause was amended, on petitioner's motion, to require the government to show cause why the petition should not be granted on or before April 29, 1981. A hearing on the petition was held on May 11, 1981.

### I.

The evidence adduced at the May 11, 1981, hearing established that petitioner was arrested by federal agents on January 29, 1979, on charges of conspiracy to distribute drugs. These charges stemmed from a joint investigation undertaken by the Drug Enforcement Administration and a special task force of Connecticut law enforcement officials.

It appears that after his arrest, federal marshals brought petitioner to the Connecticut Correctional Center in Hartford, Connecticut. Although no evidence was introduced on this point, petitioner has claimed in his reply brief, and the Court so finds, see F.R.Ev. 201(c), that most, if not all, federal pre-trial detainees are held in state jails, simply because there is no federal detention facility in Connecticut, except for the Federal Correctional Institution at Danbury. F.R.Ev. 201(b)(1), (b)(2).

A state warrant, charging petitioner with the sale of illegal drugs, issued on March 20, 1979. Petitioner, still incarcerated on federal charges in Hartford, posted federal bond shortly thereafter, on April 7, 1979. He was not released from the Hartford jail, however, because he was unable to meet the bond set on the state charges.

On May 7, 1979, Chief Judge T. Emmet Clarie allowed a writ directing the Connecticut Commissioner of Corrections to turn petitioner over to federal marshals for trial. The writ provided for petitioner's return to state authorities after conclusion of the prosecution.

Petitioner pled guilty before Judge Clarie and was sentenced to a term of three years imprisonment on June 13, 1979. Judge Clarie ordered that petitioner receive credit toward his sentence for pre-trial custody and he recommended incarceration at the Danbury Federal Correctional Institution.

The evidence at the hearing supported petitioner's contention that, at a post-sentencing conference in chambers, petitioner's pending state charges were discussed among Judge Clarie, petitioner's court-appointed attorney, a probation officer and the Assistant United States Attorney. Over respondent's objection, Judge Clarie's instructions to the probation officer were admitted at the habeas hearing in this Court to show Judge Clarie's intent. The substance of the Judge's instructions is that the probation officer was to contact the state probation department with the information that the federal sentence was intended to cover "the entire sequence of events." Petitioner's Exhibit 3, ¶ 1.

After sentencing, petitioner was returned to the Hartford Correctional Center, where he remained until September 20, 1979. On that day, he was sentenced on the state charges, apparently following a guilty plea, to one-to-two years imprisonment by Judge John D. Brennan[1] of the Connecticut Superior Court.

Testimony at the hearing in this Court suggested that Judge Brennan intended the sentence he imposed to run concurrently with his federal sentence, although a transcript of the sentencing does not clearly reflect that intent. The transcript does suggest, however, that the state's attorney, public defender and judge expected the service of the federal sentence to take place immediately. Nevertheless, petitioner was delivered, following Judge Brennan's sentence, to the Connecticut Correctional Institution at Somers.

Petitioner was paroled from Somers on December 3, 1979, and immediately brought to Danbury. It appears that once he was there, the federal authorities treated petitioner's federal sentence as having commenced on December 3, and also denied credit toward service of his sentence for the forty-five days which fell between posting of federal bond and federal sentencing.

Petitioner's attorney moved for a reduction of sentence principally on the grounds that the United States Parole Commission did not consider the extent of petitioner's cooperation with the government when it set a presumptive parole date. The motion also mentioned that federal authorities only credited petitioner with "federal time" served, viz., January 29, 1979, to April 30, 1979.

Judge Clarie reduced petitioner's sentence from three years to two years, ten months and fifteen days on February 24, 1981. The effect of this reduction, and its obvious intent, was to give petitioner credit for the forty-five days between April 30, 1979, and July 13, 1979, which the Parole Commission had not counted.

Petitioner by this petition seeks credit on his federal sentence for the time spent in state custody following the imposition of his federal sentence.

## II.

■ Initially, the government claims that the petition should be dismissed for failure to exhaust administrative remedies. Because petitioner would be "out now" if he prevails on the merits of his claim, available administrative remedies are inadequate. Accordingly, petitioner is not required to resort to the ordinary administrative procedure. *Downes v. Norton*, 360 F.Supp. 1151, 1152 n. 1 (D.Conn. 1973); *accord, Green v. Nelson*, 442 F.Supp. 1047, 1051–52 (D.Conn. 1977). *Cf. Kochie v. Norton*, 343 F.Supp. 956 (D.Conn. 1972) (exhaustion required).

Petitioner has argued that his case turns on which sovereign, the United States or Connecticut, had "primary custody." The government substantially agrees with this characterization of the legal issue presented, but argues for the conclusion that petitioner's period of incarceration was correctly calculated by federal prison authorities.

Jurisdictional conflict seems almost inevitable in our system of over fifty separate sovereignties, yet early on, certain basic principles were framed to prevent interference. *See In re Liberatore*, 574 F.2d 78, 88 (2d Cir. 1978) (citing, *inter alia,* Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 370, 21 L.Ed. 287 (1873)).

■ In the criminal prosecution field, the rule to apply is that the sovereignty which first arrests the individual acquires the right to prior and exclusive jurisdiction over him. *In re Liberatore*, 574 F.2d at 89. Clearly, the United States acquired exclusive jurisdiction over petitioner when it arrested him January 29, 1979, nearly two months before the state acted.

The government does not so much dispute that it had primary custody, as it does argue that the confluence of several factors shows it relinquished that custody. Essen-

1. Testimony indicated that Judge Brian O'Neal sentenced petitioner in state court, but a transcript of the state court sentencing indicated that Judge Brennan presided.

tially, the government's position is that, when petitioner posted federal bond, Connecticut acquired primary custody. It contends that this reading of the case is supported by the state's physical restraint of petitioner and use of the writ of habeas corpus *ad prosequendum* to obtain petitioner's presence at federal court.

The cornerstone of this line of reasoning is the government's assertion that primary custody was lost when petitioner made federal bail, yet remained in the Hartford jail for inability to post state bond. This Court is of the opinion that the government's argument too narrowly construes the concept of primary custody and overstates the effect of posting bail bond.

Primary custody has many facets, one of which certainly may be actual physical restraint, but it is also much more. *In re Liberatore*, 574 F.2d at 88–90. Similarly, one free on bail may enjoy more liberty than a pre-trial detainee, but the former is not unrestricted. *E. g., Hensley v. Municipal Court*, 411 U.S. 345, 348, 93 S.Ct. 1571, 1573, 36 L.Ed.2d 294 (1973) (California statute: release on own recognizance).

■ Accordingly, this Court finds that federal primary custody was not relinquished when petitioner made federal bail. *Accord, United States v. Croft*, 450 F.2d 1094, 1098–99 (6th Cir. 1971); *see also Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). That being so, it is clear that Connecticut did not acquire primary custody merely because it mounted a contemporaneous prosecution on which petitioner was jailed. *In re Liberatore*, 574 F.2d at 89. Nor does use of the writ of *habeas corpus ad prosequendum* change this analysis: since petitioner was physically restrained by Connecticut, there was no other procedure available to obtain his presence before Judge Clarie.

■ The exclusive jurisdiction obtained through primary custody is not exhausted until after service of any sentence imposed.

*In re Liberatore*, 574 F.2d at 89. A "loan" to a second sovereignty, through, for example, a writ of habeas corpus *ad prosequendum*, does not affect the running of the sentence.[2] *Id.* Absent any contrary statutory authority, a sentence runs continuously from the date of imposition. *Id.* at 90; *accord, United States v. Croft*, 450 F.2d at 1099; *Gillman v. Saxby*, 392 F.Supp. 1070, 1072 (D.Hawaii 1975). Accordingly, petitioner's federal sentence ran from June 13, 1979, the day Judge Clarie committed him to the custody of the Attorney General.

Service of the sentence begins on the date the person is received at the place of the service. 18 U.S.C. § 3658. The Attorney General must allow credit toward service of the sentence for days in custody in connection with the offense for which the sentence was imposed. *Id.*; 28 C.F.R. § 2.10(a); *see also Farley v. Nelson*, 469 F.Supp. 796, 801 (D.Conn. 1979).

■ Here, petitioner was in primary custody of federal officials. He was lawfully sentenced by a United States District Court Judge. Even though his physical presence had been secured by a writ of habeas corpus *ad prosequendum*, primary custody did not shift, nor did it end after the sentencing. Once the United States Marshal received a certified copy of the judgment and commitment order, *see* Petitioner's Exhibit 1, Commitment Recommendation, the next step ordinarily would have been for him to receive a designation of the place of confinement from the Bureau of Prisons and to transport the prisoner to that institution. In this case, no designation was made, through no fault of petitioner's. *Cf. United States v. Gaines*, 449 F.2d 143, 144 (2d Cir. 1971) (per curiam) (prisoner credited with state time served; wealth-based discrimination). But he cannot be made to suffer loss of credit because of administrative error.

Accordingly, respondents are Ordered to credit petitioner with the time he spent incarcerated from sentencing before Judge Clarie to December 3, 1979. If the respon-

---

2. *Carotenuto v. Nelson*, B–77–244 (D.Conn. June 28, 1978), cited by the government in support of its position, is consistent with the rule referred to in *Liberatore*. In *Carotenuto*, the state court had primary custody which was not interrupted by loan.

dents have not so credited petitioner by the close of business on June 5, 1981, the writ of habeas corpus prayed for shall issue, releasing petitioner from custody as if on parole. *See Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir. 1978).

SO ORDERED.

