**Jerome JACKSON, Plaintiff,**

v.

**Michael P. LANE, Director, Illinois Department of Corrections, et al., Defendants.**

**No. 84 C 4494.**

United States District Court, N.D. Illinois, E.D.

June 26, 1985.

Jerome Jackson, pro se.

Neil F. Hartigan, Atty. Gen. of Illinois by Stephen G. Kehoe, Asst. Atty. Gen., Chicago, for defendants.

## MEMORANDUM AND ORDER

BUA, District Judge.

### FACTS

Plaintiff Jerome Jackson is a prisoner of the Illinois Department of Corrections, incarcerated at the Stateville Correctional Center ("Stateville"), Joliet, Illinois. Defendant Tillis is a Correctional Sergeant at Stateville. On August 22, 1983, Jackson was presented with a copy of an Inmate Disciplinary Report, written by Tillis, alleging that Jackson had violated "Administrative Regulation 804, Rule # 102, Assaulting Any Person." Complaint, Exhibit A. Tillis charged in the report that:

> While escorting Unit E yard, said resident [Jackson] ran up and hit me on the head knocking me down. Said resident had on a black mask and a hooded sweat shirt pull [sic] down over his head. I got away from the resident and he followed and hit me again. I recognized resident from the shape of his body. Resident had on slick blue state issued pants.

Complaint, Exhibit A.

On September 2, 1983, after an agreed continuance from August 25, 1983, Jackson appeared before the prison Adjustment Committee, a review board composed of defendants Johnson, Adjustment Committee Chairman, and Correctional Counselors Schomberger, McCabe, Rivera and Forkas. The Adjustment Committee found Jackson guilty of the charges set forth in the Inmate Disciplinary Report and sentenced the plaintiff to 360 days segregation, 360 days loss of good time, and 360 days demotion to C-Grade. The Adjustment Committee

based its decision on plaintiff's statement that he was present at the time of the incident; a positive photo identification by Tillis of Jackson in a picture line-up; and the Adjustment Committee's observation that Jackson did have an identifiable body, including a "very muscular upper torso, slim waist and always wears tight pants." Complaint, Exhibit B.

In response to the Adjustment Committee's findings, Jackson filed a complaint with the Administrative Review Board ("Review Board") on September 20, 1983. The Review Board was composed of defendants Hetman, the chairperson, Henry and Melendez. On October 25, 1983, the Review Board affirmed the decision of the Adjustment Committee. In addition to the facts established by the Adjustment Committee, the Review Board also considered Jackson's refusal to submit to a polygraph examination and his prior disciplinary record which indicated numerous reports of misconduct, including reports of intimidation or threats, possession of contraband weapons, insolence and threats towards correctional employees. Complaint, Exhibit D.

After exhausting his state administrative remedies, Jackson filed this suit alleging violations of the fifth, eighth, and fourteenth amendments to the U.S. Constitution. Jackson seeks relief pursuant to 42 U.S.C. § 1983. Before the Court is defendants' motion to dismiss, or in the alternative, for summary judgment. On September 10, 1984, the parties were informed by the Court that defendants' motion would be treated as a motion for summary judgment. See Fed.R.Civ.P. 12(b). On January 7, 1985, Jackson filed a response to defendants' motion. Jackson alleges that Tillis' identification of Jackson as the assailant and the findings of both the Adjustment Committee and the Review Board were determined on the basis of insufficient evidence. Jackson contends that because Tillis' assailant was hooded and masked, a positive identification was virtually impossible. Jackson also contends that the Adjustment Committee failed to give an adequate statement of the reasons for the disciplinary action taken. Finally, Jackson asserts that because the decisions of both the Adjustment Committee and the Review Board were made pursuant to the disciplinary report, and that the decision of the Review Board was in part based on Jackson's past institutional record, the findings of these two boards were not based on sound evidence and were thus a violation of Jackson's constitutional rights.

For the reasons stated below, defendants' motion for summary judgment is granted.

## DISCUSSION

Under Rule 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R. Civ.P. 56. To the extent that the record is unclear or the facts conflicting, the evidence in the record must be viewed in the light most favorable to the party opposing the motion. U.S. v. One Heckler-Koch Rifle, 629 F.2d 1250, 1251 (7th Cir.1980).

In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that if a state creates a right for a prisoner to earn good-time credits—that is, a firm expectation that if the prisoner complies with specified conditions he will automatically earn the credits and be released earlier—the prisoner has a liberty interest protected under the fourteenth amendment. Wolff, supra, 418 U.S. at 557, 94 S.Ct. at 2975. Further, a state which provides a prisoner with the right to remain free of disciplinary segregation unless the prisoner violates specific conditions creates a liberty interest within the meaning of the due process clause. Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). By reason of Illinois law, the plaintiff in the instant case has a protectable liberty interest to remain in the general prison population and to earn good-time credits during his period of incarceration. See Woodall v. Partilla,

581 F.Supp. 1066, 1072 (D.C.Ill.1984). Thus, Jackson's claims with respect to loss of good time and administrative segregation fall within the parameter of those liberty interests protected under the fourteenth amendment and the state's disciplinary proceedings are subject to procedural due process protections.

## Due Process Standards

■ It is well settled that in determining what "process is due" in the prison context "one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Hewitt, supra,* 103 S.Ct. at 872. The Court in *Hewitt* examined the interests involved in the prison's regulation of administrative segregation and determined that the basis for confining a prisoner to administrative segregation, namely to reduce the threat of safety of other inmates and prison officials, was perhaps the most fundamental responsibility of the prison administration. *Id.* at 872. In balancing this interest against the prisoner's private interest of remaining in the general prison population, the Court concluded that the due process clause requires only an informal nonadversary review of the evidence from which to decide whether an inmate should be confined to administrative segregation. *Id.* at 873.

This nonadversary evidentiary review consists of some notice to the prisoner of the pending charges and an opportunity on the part of the prisoner to present his views to the prison official charged with deciding whether to transfer the prisoner to segregation. As long as these requirements are met, and the decision maker has the opportunity to review the charges and then-available evidence against the prisoner, the requirements of the due process clause are satisfied. *Id.* at 874. The Supreme Court reasoned that this procedure provides for a reasonably accurate assessment of probable cause to determine whether misconduct has occurred. *Id.*

■ In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court outlined the minimum requirements of procedural due process appropriate for determining whether a prisoner's behavior justifies the loss of good-time credits. These requirements include: (1) 24-hour advance written notice of the claimed violation; (2) a written statement of the factfindings as to the evidence relied upon; and (3) adequate reasons for the disciplinary action taken. The prisoner should also be afforded an opportunity to call witnesses and present documentary evidence in his defense unless permitting the inmate to do so would be unduly hazardous to institutional safety or correctional goals. *Wolff, supra,* 418 U.S. at 566, 94 S.Ct. at 2979. The function of the notice requirement is to give the charged party an opportunity to gather the facts in his defense. The purpose of the written statement is to protect the inmate against collateral consequences based on a misunderstanding of original proceedings and also helps to insure that administrators will act fairly. *Id.*

■ Measured against the standards set forth in *Hewitt* and *Wolff,* this Court finds that Jackson was afforded his constitutional protections as guaranteed under the due process clause. Jackson received well over the 24-hour notice requirement mandated by the Court in *Wolff.* Further, as required by *Hewitt* and *Wolff,* Jackson was given an opportunity to present his defense to the proper disciplinary board through his appearance before the Adjustment Committee on September 2, 1983. Although the record does not indicate the degree of his participation at this hearing, Jackson has at no time raised as an issue, or presented any evidence in this Court, that he was denied an opportunity to be adequately heard.

Finally, Jackson was provided with written statements from both the Adjustment Committee hearing of September 2, 1983, and the Administrative Review Board meeting of October 25, 1983. Both statements contain the evidence relied upon and the reasons for the disciplinary action taken. Jackson contends, however, that these statements were lacking because the Ad-

justment Committee summary failed to give an adequate statement of reasons for the action taken and the Review Board statement contained information regarding plaintiff's prior disciplinary record.

In arguing that the statements were deficient, Jackson relies upon the reasoning of *United States ex rel. Johnson v. Chairman, New York Board of Parole*, 500 F.2d 925 (2nd Cir.1974). In *Johnson*, the court held that to satisfy minimum due process with respect to parole release proceedings, a statement of reasons denying the parole should be "sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all." *Johnson, supra*, 500 F.2d at 934. The court further held that for this purpose, detailed findings of fact were not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision and the essential facts upon which the Board's inferences are based. *Id.* at 934.

■ Jackson argues that the evidence set forth in the written statements, namely the identification of Jackson as Defendant Tillis' assailant decided on the basis of plaintiff's distinguishable body features along with the introduction and consideration of prior disciplinary problems, was not sufficient to find Jackson guilty pursuant to the minimum due process standard established in *Johnson*. This Court disagrees. As the Supreme Court noted in *Hewitt*, a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators who must necessarily draw on more than the specific facts surrounding a particular incident. *Hewitt*, 103 S.Ct. at 872–73. Prison administrators must consider the character of the inmates confined in the institution and past relations between prisoners and guards.

*Id.* at 872–873. The Court in *Hewitt* reasoned that the judgment of prison officials in the volatile atmosphere of a prison may turn largely on purely subjective evaluations and predictions of future behavior based on such factors as past misconduct or even rumor and reputation. *Id.* at 873.

■ Furthermore, in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court held that because daily operations of a corrections facility are not susceptible of easy solutions, prison administrators should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to ensure the safety of inmates and corrections personnel. *Id.* at 547, 99 S.Ct. at 1878. Thus, in the case at hand, both the Adjustment Committee and the Review Board were entitled to consider factors which, in their judgment, were essential in order to determine Jackson's guilt or innocence. Further, it was within the prison administration's discretion to determine the credibility or noncredibility of the evidence presented. Jackson's dissatisfaction with these findings and conclusions does not constitute a cause of action when, as this Court has determined, he was duly afforded his minimum due process rights.[1]

■ Finally, plaintiff's argument that the evidence was not sufficient to support a finding of guilty is equally without merit. Regarding the sufficiency of evidence, the Supreme Court has recently held that the requirements of due process are met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Walpole v. Hill*, ⎯ U.S. ⎯, ⎯, 105 S.Ct. 2768, ⎯, 86 L.Ed.2d 356 (1985). Although the evidence presented to the Adjustment Committee could have supported a different result, due process "does not require evidence that logi-

---

1. Plaintiff clearly does not state an eighth amendment claim of cruel and unusual punishment. Punishment has been characterized as cruel and unusual when it is incompatible with "the evolving standards of decency that mark the progress of a maturing society, and when it involves unnecessary and wanton infliction of pain or is grossly disproportionate to the severity of the crime." *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (*quoting Trop v. Dulles*, 356 U.S. 86, 100, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958)). The facts of plaintiff's case do not allege violations of these general standards.

cally precludes any conclusion but the one reached by the disciplinary board." *Id.* at ——, 105 S.Ct. at ——. In this case, the photo identification, plaintiff's statements at the hearing and plaintiff's "identifiable body" clearly constitute sufficient evidence under *Walpole*.

## CONCLUSION

Finding that the record of the case fails to show a genuine issue as to any material fact, this Court grants defendant's motion for summary judgment. Accordingly, plaintiff's complaint is hereby dismissed.

IT IS SO ORDERED.