Ronald MOSLEY, Plaintiff-Appellant,

v.

Captain MORAN, et al.,
Defendants-Appellees.

No. 85–1757.

United States Court of Appeals,
Seventh Circuit.

Argued June 17, 1986.

Decided Aug. 4, 1986.

Howard B. Eisenberg, Southern Illinois University Carbondale, Ill., for plaintiff-appellant.

Joan Fickinger, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before WOOD, POSNER and FLAUM, Circuit Judges.

## I.

PER CURIAM.

Plaintiff, Ronald Mosley, is incarcerated at the Stateville Correctional Center in Illinois. Although his complaint contained a variety of claims, the only claim before us on appeal is Mosley's habeas corpus claim challenging the methods employed in determining his release date. The district court determined that Mosley could have pursued a mandamus action in state court, but that he was not required to exhaust his state court remedies because he was entitled to immediate release if he prevailed on his federal habeas claim. The state does not raise the exhaustion issue on appeal. Initially the district court granted relief on the habeas claim, but, after being provided with more facts, it reconsidered its decision and denied relief. Mosley appealed. While the appeal was pending, the district court granted a certificate of probable cause. We have jurisdiction over the appeal. *See* 28 U.S.C. §§ 1291, 2253.

Mosley began serving his sentence in February 1975. Under the system then in force, Mosley was given a minimum and maximum sentence. The minimum sentence governed his eligibility for parole and his maximum sentence governed his release from incarceration or parole. While incarcerated he could earn "statutory good time credit" for time served with good behavior and "compensatory good time credit" based on tasks he performed. These credits reduced both his minimum sentence and maximum sentence. *See* Ill.Rev.Stat. ch. 38, §§ 1003–3–3, 1003–6–3, 1003–12–5, 1005–8–1 (1977); *Johnson v. Franzen*, 77 Ill.2d 513, 34 Ill.Dec. 153, 154, 397 N.E.2d 825, 826 (1979). On February 1, 1978, statutes went into effect which provided for a new system of determinate sentences under which "good conduct credit" was computed solely on the basis of time served

with good behavior. Credits move up the prisoner's release date with no separate computation for parole. *See* Ill.Rev.Stat. ch. 38, §§ 1003–3–3, 1003–6–3(a), 1005–8–1 (1978); *Johnson*, 34 Ill.Dec. 154–55, 397 N.E.2d at 826–27. The new statute also provided for review by the Prisoner Review Board of revocations of more than thirty days' good conduct credit during any twelve-month period. Ill.Rev.Stat. ch. 38, §§ 1003–3–2(a)(4), 1003–6–3(c) (1978). Following their first parole hearing after February 1, 1978, prisoners incarcerated under the old system were given notice and the opportunity to choose between the new and old system. *See id.* § 1003–3–2.1.

In September 1978, Mosley was notified that he had sixty days in which he could choose to either remain on the old parole system or accept the new release date system. He timely sought reconsideration of the proposed release date. The reconsideration was denied and in February 1979 he was again given sixty days to select one of the options. Mosley never responded so by default he continued under the old system. In July 1979, Mosley was involved in an altercation with two guards. The guards allegedly falsified reports and Mosley subsequently lost one years' good time credit. Mosley also alleges that he improperly lost a total of six years and four months of good time credit during 1979. In March 1980, presumably because of a decision of the Illinois Supreme Court, *see Johnson v. Franzen*, 77 Ill.2d 513, 34 Ill.Dec. 153, 397 N.E.2d 825 (1979), Mosley was given another opportunity to choose between the two systems. He again failed to respond within the allotted sixty days. In his federal habeas petition, Mosley complains that his good time credits should not have been revoked without the revocation being reviewed by the Prisoner Review Board.

## II.

The question of whether Mosley exhausted his state court remedies (a nonjurisdictional prerequisite for federal habeas relief, *see* 28 U.S.C. § 2254(b)) was raised and argued in the district court, but has not

been raised on appeal. At oral argument, appellant admitted that he has not exhausted his state court remedies,[1] but argued that it is not mandatory that we reach that issue if not raised by the state on appeal. At oral argument, the state expressly waived raising the exhaustion issue. Counsel pointed out that she had consciously decided not to raise the issue on appeal because this case had already been proceeding for over six years and she believed it would be inappropriate to deny relief on exhaustion grounds after such a length of time. *Cf. Farley v. Nelson,* 469 F.Supp. 796, 801 (D.Conn.), *aff'd without opinion,* 607 F.2d 995 (2d Cir.1979).

 It is clear that we *may* reach the exhaustion issue *sua sponte* where the state failed to raise the issue below, but raises it for the first time on appeal. *See Granberry v. Mizell,* 780 F.2d 14, 15–16 (7th Cir.1985). There is also precedent in this circuit indicating that we *must* always consider exhaustion. *See Mattes v. Gagnon,* 700 F.2d 1096, 1098 n. 1 (7th Cir.1983). Additionally, there are cases questioning whether the exhaustion requirement may be expressly waived by state executive officials. *See Walberg v. Israel,* 766 F.2d 1071, 1072 (7th Cir.1985); *Granberry,* 780 F.2d at 15–16. However, there is also a recent case where the parties did not raise the exhaustion issue on appeal and we therefore found it unnecessary to reach the issue. *See United States ex rel. Russo v. Attorney General of Illinois,* 780 F.2d 712, 714 n. 1 (7th Cir.1986) (per curiam), *cert. denied,* —— U.S. ——, 106 S.Ct. 2922, 91 L.Ed.2d 550 (1986). None of the cases cited required that we decide if the state can expressly waive the exhaustion requirement and we have yet to resolve that question. The present case also does not require the resolution of that question which we leave for another day. We be-

lieve that the precedents permit us to not reach the exhaustion issue when "special circumstances" are present, *see Frisbie v. Collins,* 342 U.S. 519, 520–22, 72 S.Ct. 509, 510–11, 96 L.Ed. 541 (1952), but we emphasize that a federal court should reach nonexhausted habeas claims only "in those rare instances where justice so requires." *United States ex rel. Trantino v. Hatrack,* 563 F.2d 86, 95 (3d Cir.1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978), quoting *United States ex rel. Graham v. Mancusi,* 457 F.2d 463, 468 (2d Cir.1972). In light of the facts that Mosley has been pursuing the present litigation in federal court for almost seven years; the exhaustion issue was not raised in the briefs; and counsel for the state has expressly stated that she does not wish to raise the exhaustion issue, we find this to be a case in which we need not reach the exhaustion issue *sua sponte.*

### III.

In *Johnson v. Franzen,* the Illinois Supreme Court determined that the 1978 statutory amendments provided that beginning February 1, 1978, good conduct credits would be earned by all prisoners. This includes those incarcerated prior to that date who chose to continue on the old parole system. 34 Ill.Dec. 155–57, 397 N.E.2d at 827–29. The Department of Corrections, however, continues to compute credits based on the good time system if that system is more beneficial; that procedure has been approved by the courts. *See Williams v. Irving,* 98 Ill.App.3d 323, 53 Ill. Dec. 746, 749, 424 N.E.2d 381, 384 (1981); *Barksdale v. Franzen,* 700 F.2d 1138, 1142 (7th Cir.1983). The prohibition on *ex post facto* laws presumably requires the continuation of the good time system for those previously incarcerated prisoners for whom it is beneficial. *See id.* at 1140 n. 2.

---

**1.** The district court, following *Lepore v. Anderson,* 448 F.Supp. 716, 717 (M.D.Pa.1978), found that Mosley would be entitled to immediate release if successful on his habeas claim and therefore exhaustion was not required. As discussed below we find it unnecessary to reach the exhaustion issue, but do note that had we

been required to reach that issue we strongly doubt that we would have followed *Lepore.* A large number of, if not most, habeas petitions seek immediate release. If a request for such relief was a sufficient ground to ignore the exhaustion requirement, the exhaustion requirement would be largely obliterated.

The Prisoner Review Board reviews revocations of more than thirty days of good conduct credits. Ill.Rev.Stat. ch. 38, §§ 1003–3–2(a)(4), 1003–6–3(c) (1978); *Taylor v. Franzen*, 93 Ill.App.3d 1152, 51 Ill. Dec. 645, 646, 420 N.E.2d 1203, 1204 (1981). The plain language of the statute is ambiguous regarding whether the Board also reviews revocations of good time credits. Under the former system, the Director of the Department of Corrections determined whether good time credits should be revoked. The statute defining the Board refers to the review of "good time" credits. *See* Ill.Rev.Stat. ch. 38, § 1003–1–2(1) (1978). However, the statutes delineating the Board's review power refer only to the review of revocations of "good conduct" credits. *See id.* §§ 1003–3–1, 1003–3–2, 1003–6–3. The Department of Corrections has decided that under the current statute the Board is not empowered to review revocations of good time credits. One Illinois case speaks of good conduct and good time credits interchangeably and can be read as implicitly holding that the Board reviews revocations of good time credits, *see generally Taylor v. Franzen*, 93 Ill.App.3d 758, 48 Ill.Dec. 840, 417 N.E.2d 242, *supplemental opinion on rehearing*, 93 Ill. App.3d 1152, 51 Ill.Dec. 645, 420 N.E.2d 1203 (1981), but such a reading is far from clear.[2] Mosley did not cite *Taylor* nor does either party refer us to any Illinois case construing the statute as regards the issue pertinent to this appeal and we have not found any. We are therefore faced with a question of first impression regarding the construction of a state statute.

■ Illinois prisoners have a constitutionally protected interest in the good time credits they have accumulated. *Williams v. Irving*, 53 Ill.Dec. at 751, 424 N.E.2d at 386; *People ex rel. Yoder v. Hardy*, 116 Ill.App.3d 489, 71 Ill.Dec. 811, 813, 451 N.E.2d 965, 967 (1983); *Jackson v. Lane*,

611 F.Supp. 933, 935 (N.D.Ill.1985). Mosley does not contend that the hearing provided to him by the Director did not comply with the minimum requirements of due process mandated by the Constitution. He argues only that the statutorily mandated review by the Board was denied and that violation of the state statute violates constitutional due process. We note though that only violations of federal statutory or constitutional law can be the basis for granting federal habeas relief, *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 436–37 (7th Cir.1982), and state law claims ordinarily cannot be pendent to federal habeas claims, *see id.* at 445. Even assuming that the state statute mandates review by the Prisoner Review Board, we doubt that failure to follow the statute would be a violation of constitutional due process. *See Olim v. Wakinekona*, 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959); *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir.1982); *Harris v. McDonald*, 737 F.2d 662, 665 (7th Cir. 1984) (per curiam); *Muckway v. Craft*, 789 F.2d 517, 521–22 (7th Cir.1986), quoting *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944); *Hoover v. Franzen*, 669 F.2d at 445 n. 28; *Hall v. Wainwright*, 733 F.2d 766, 782 (11th Cir. 1984) (Hill, J., specially concurring), *cert. denied*, —— U.S. ——, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985). However, the state does not make this argument so we decline to reach it. In any event, habeas relief is being denied for other reasons so it is not necessary to reach the issue.

■ As we pointed out above, the applicable statute is ambiguous. However, only the section generally defining the Prisoner Review Board refers to the review of the revocation of good time credits.[3] The sec-

---

2. *Taylor* involves the revocation of one year of credit on February 8, 1979 for an offense committed in January 1979. As of February 1, 1979 Taylor could have accumulated one year of good conduct credit, but throughout the original opinion the court usually refers to the revoca-

tion of his "good time" credits. In the supplemental opinion the court explicitly held that the Prisoner Review Board is the proper body to review the revocation of "good conduct" credits.

3. "Prisoner Review Board" means the Board established in Section 3–3–1(a), independent

tions more specifically delineating the Board's powers and duties refer only to the review of good conduct credits.[4] It is a principle of statutory construction "that a more specific statute will be given precedence over a more general one." *United States v. Olinger*, 759 F.2d 1293, 1299 (7th Cir.), *cert. denied*, ── U.S. ──, 106 S.Ct. 120, 88 L.Ed.2d 98 (1985), quoting *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980). Therefore, looking to the more specific sections, the statute should be read as only provid-

ing for the review of the revocation of good conduct credits. Such a reading is consistent with the fact that Illinois continues to maintain two relatively discrete systems of computing the time to be served by prisoners; it is consistent with the legislation to assume that new review procedures apply only to computations under the new system. Also, statutes that went into effect subsequent to the commission of the crime will not be applied retroactively unless there is statutory language clearly to that effect. *See People ex rel. Kerner v.*

of the Department, to review rules and regulations with respect to *good time credits,* to hear charges brought by the Department against certain prisoners alleged to have violated Department rules with respect to *good time credits,* ...

Ill.Rev.Stat. ch. 38, § 1003-1-2(*l*) (1978) (emphasis added).

4. Establishment and Appointment of Prisoner Review Board. (a) There shall be a Prisoner Review Board independent of the Department of Corrections which shall be: ...

(2) the board of review for cases involving the revocation of *good conduct credits* or a suspension or reduction in the rate of accumulating such credit; ...

Ill.Rev.Stat. ch. 38, § 1003-3-1 (1978) (emphasis added).

Powers and Duties. (a) ... the Prisoner Review Board shall ...

(4) hear by a least 1 member and through a panel of at least 3 members, decide cases brought by the Department of Corrections against a prisoner in the custody of the Department for alleged violation of Department rules with respect to *good conduct credits* pursuant to Section 3-6-3 of this Code in which the Department seeks to revoke *good conduct credits,* if the amount of time at issue exceeds 30 days or when, during any 12 month period, the cumulative amount of credit revoked exceeds 30 days except where the infraction is committed or discovered within 60 days of scheduled release. In such cases, the Department of Corrections may revoke up to 30 days of *good conduct credit.* The Board may subsequently approve the revocation of additional *good conduct credit,* if the Department seeks to revoke *good conduct credit* in excess of thirty days. However, the Board shall not be empowered to review the department's decision with respect to the loss of 30 days of *good conduct credit* for any prisoner or to increase any penalty beyond the length requested by the department; ...

*Id.* § 1003-3-2 (emphasis added).

Rules and Regulations for Early Release. (a)(1) The Department of Corrections shall prescribe rules and regulations for the early

release on account of *good conduct* of persons committed to the Department which shall be subject to review by the Prisoner Review Board....

(c) The Department shall prescribe rules and regulations for revoking *good conduct credit,* or suspending or reducing the rate of accumulation thereof for specific rule violations, during imprisonment. Such rules and regulations shall provide that: ...

(2) no inmate may be penalized more than one year of *good conduct credit* for any one infraction.

When the Department seeks to revoke, suspend or reduce the rate of accumulation of any *good conduct credits* for an alleged infraction of its rules, it shall bring charges therefor against the prisoner sought to be so deprived of *good conduct credits* before the Prisoner Review Board as provided in subparagraph (a)(4) of Section 3-3-2 of this Code, if the amount of credit at issue exceeds 30 days or when during any 12 month period, the cumulative amount of credit revoked exceeds 30 days except where the infraction is committed or discovered within 60 days of scheduled release. In such cases, the Department of Corrections may revoke up to 30 days of *good conduct credit.* The Board may subsequently approve the revocation of additional *good conduct credit,* if the Department seeks to revoke *good conduct credit* in excess of thirty days. However, the Board shall not be empowered to review the Department's decision with respect to the loss of 30 days of *good conduct credit* within any calendar year for any prisoner or to increase any penalty beyond the length requested by the Department.

(3) The Director of the Department of Corrections, in appropriate cases, may restore up to 30 days *good conduct credits* which have been revoked, suspended or reduced. Any restoration of *good conduct credits* in excess of 30 days shall be subject to review by the Prisoner Review Board. However the Board may not restore *good conduct credit* in excess of the amount requested by the Director....

*Id.* § 1003-6-3 (emphasis added).

*McKinley*, 371 Ill. 190, 20 N.E.2d 498, 501 (1939). There is no such clear language in the new Act.[5] Additionally, in interpreting state law, we will give substantial deference to the interpretation of the district court, *see Goldstick v. ICM Realty*, 788 F.2d 456, 466 (7th Cir.1986), and in the present case the district court held that the statute does not provide for Board review of good time revocations. Last, we should be cautious in expanding rights under state law absent clear reasons to do so.[6] *Cf. Trembath v. St. Regis Paper Co.*, 753 F.2d 603, 605 (7th Cir.1985). For these reasons, we read the statute as not providing for Board review of good time revocations.

Mosley also argues that there is an equal protection violation. But he alleges no invidious discrimination and it is not irrational to implement a new system and provide new procedures only to those who fall under the new system. Additionally, there is no claim that Mosley is treated differently from other prisoners who accumulated or still accumulate good time credits. *Cf. Raimondo v. Belletire*, 789 F.2d 492, 497 (7th Cir.1986); *Inglese v. United States Parole Commission*, 768 F.2d 932, 940 (7th Cir.1985); *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir.1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979).

Mosley cannot succeed on his claim that his good time credits were improperly revoked because the revocation was not reviewed by the Prisoner Review Board. Therefore, he had adequate information by which to select between the parole and release systems and he was given adequate time and opportunity to make that selection. Also, since the Department of Cor-

rections computes his present accumulation of credits toward parole under both the good time and good conduct systems, and applies whichever is more beneficial, *see Williams v. Irving*, 53 Ill.Dec. at 749, 424 N.E.2d at 384; *Barksdale v. Franzen*, 700 F.2d at 1142, there can be no complaint that his present accumulation of credits is administered improperly. Mosley has no claim upon which habeas relief can be granted. It was proper to deny him an evidentiary hearing on his claims.

IV.

For the reasons given above, the judgment of the district court is

AFFIRMED.

---

**5.** Mosley argues that *Johnson v. Franzen* decides that the Illinois legislature intended for all aspects of the new legislation to apply to prisoners sentenced under the old system. *Cf. Johnson*, 34 Ill.Dec. 155–56, 397 N.E.2d at 827–28. But *Johnson* only decided that good conduct credits must be provided for all time served after February 1, 1978 regardless of whether the prisoner is under the parole or release date system. *Id.*, 34 Ill.Dec. at 57, 397 N.E.2d at 829. The Illinois Supreme Court repeated a number of times that that conclusion was based on the express lan-

guage contained in Ill.Rev.Stat. ch. 38, § 1005–8–7(b) (1978). *Johnson*, 34 Ill.Dec. at 155–57, 397 N.E.2d at 827–29.

**6.** The Illinois courts are of course free to construe the statute and reach a conclusion different from ours. If they do so in the future, we will, of course, be bound by their interpretation. *See Kingsley International Pictures Corp. v. Regents*, 360 U.S. 684, 688, 79 S.Ct. 1362, 1365, 3 L.Ed.2d 1512 (1959).