STATE EX REL. SCHLEHLEIN, Respondent, v. DURIS, Appellant.

*No. 204.  Argued January 31, 1972.—Decided February 29, 1972.*
(Also reported in 194 N. W. 2d 613.)

For the appellant there was a brief by *Charlton, Yanisch, Greco & Roffa,* attorneys, and *Earl A. Charlton* and *Carlton Roffa* of counsel, all of Milwaukee, and oral argument by *Carlton Roffa.*

For the respondent the cause was argued by *James W. Conway,* assistant corporation counsel of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *Robert P. Russell,* corporation counsel.

BEILFUSS, J. The defendant-appellant, Duris, has raised three questions on this appeal:

(1) Was it error to refuse to admit testimony as to the resemblance between the child and a man not a party to the action?

(2) Was it error to refuse to hear an offer of proof on the resemblance issue?

(3) Was the evidence sufficient to sustain a finding that defendant was the father of the child?

The complainant, Nancy J. Schlehlein, gave birth to a baby girl on April 7, 1969. She was unmarried at all times during the relevant course of events in this case. The complaint charged that the father of the child was Sherman Duris, who has been married to another woman during all of the relevant events in this case. He has three children by his wife. He resides in the lower of two flats at 302 East Clarence Street, Milwaukee, Wisconsin.

Nancy Schlehlein testified that in April, 1968, she moved into the upstairs flat at 302 East Clarence Street at the suggestion of the defendant, and lived there between June 10, 1968, and August 9, 1968. The latter two dates are the outer limits of the possible conceptive period.

Nancy Schlehlein testified that she had sexual intercourse with Duris some 30 times during the conceptive period. The acts of intercourse took place in her flat, the basement, the attic, in his car, and once in a tent. She further testified that she had not gone out with any other man during the conceptive period, nor did she have sexual relations with any other man than Duris during that time.

Nancy Schlehlein also stated that she called Duris twelve hours after the baby was born and that he said he "was sorry that he disappointed me because I wanted a boy."

In May, 1969, Duris came to Mrs. Ruth Koprek's house where Nancy Schlehlein and her baby were visiting Mrs. Koprek and her family. Mrs. Koprek testified that Duris stated at some point while he was there, "now, we don't want to have a baby this way again." Duris made this statement to Nancy Schlehlein in front of the Koprek family.

Duris testified that he never had sexual relations with Nancy Schlehlein. He also testified that he never went out alone with her socially during the conceptive period. He also denied knowing Ruth Koprek.

Marilyn Tal, the defendant's sister, testified that in August, 1969, Nancy Schlehlein told her and the defendant that they would have to prove that Duris was not the father even though Nancy Schlehlein knew it was not the truth.

Elizabeth Olk, a waitress at Melba's Truck Stop, testified that on February 15, 1970, one Nilo Torres said to the baby, "Come to Daddy." This alleged incident took place at Melba's. Nancy Schlehlein did not make any response to Torres' comment.

Mrs. Olk then testified that on the occasion in February of 1970, she did observe the baby and Torres. The court then sustained an objection to any further testimony by Mrs. Olk on the question of resemblance upon the ground that it was immaterial.

In an early case, *Hanawalt v. State* (1885), 64 Wis. 84, 24 N. W. 489, this court considered the question of resemblance in a paternity proceeding. The issue presented itself in a somewhat different manner. There the trial court erroneously permitted the state to exhibit the child to the jury in an attempt to show a resemblance between the child and the defendant. Here it was only an attempt to offer the opinion of Mrs. Olk from her February observation of the child and Torres. The child was not exhibited nor was Torres present, nor was he a party to the action.

In *Hanawalt*, at page 87, the court stated:

"In any case this kind of evidence is inherently unsatisfactory, as it is a matter of general knowledge that different persons, with equal opportunities of observation, will arrive at different conclusions, even in the case of mature persons, when a family likeness will be fully developed if there be any. And when applied to the im-

mature child its worthlessness as evidence to establish the fact of parentage is greatly enhanced, and is of too vague, uncertain, and fanciful a nature to be submitted to the consideration of a jury.

"The learned author of 'Beck's Medical Jurisprudence' says: 'It has been suggested that the resemblance of a child to the supposed father might aid in deciding doubtful cases. This, however, is a very uncertain source of reliance. We daily observe the most striking differences in physical traits between parent and child, while individuals born in different parts of the globe have been mistaken for each other. And even as to malformations, although some remarkable resemblances in this respect have been noticed between father and child, yet we should act unwisely in relying too much on them. There is, however, a circumstance connected with this which, when present, should certainly defeat the presumption that the husband or paramour is the father of the child, and that is when the appearance of the child evidently proves that its father must have been of a different race from the husband or paramour, as when a mulatto is born of a white woman whose husband is also white, or a black woman whose husband is a negro.' In a case where the question of race is concerned, the child may be exhibited for the purpose of showing that it is or is not of the race of its alleged father. *Warlick v. White,* 76 N. C. 175. In a case like the one at bar, we think no exhibition should be made."

In oral argument in this court defendant's counsel stated that the testimony of Mrs. Olk would have shown that the child bore a resemblance to Nilo Torres, a Puerto Rican with a dark complexion. His argument is that the testimony was material under the exception in *Hanawalt, supra,* which would allow the defendant to show the child to the jury to demonstrate a difference in race between the child and the defendant.

We believe the trial court was not in error in sustaining the objection. We adhere to the rule, as stated in *Hanawalt,* that evidence of resemblance is "inherently unsatisfactory." Even if this is an attempt to show racial characteristics of the child that would eliminate the de-

fendant as the father, the manner in which the proof was proffered was unsatisfactory and completely unreliable. There was no offer to show that Puerto Ricans are of a different race than the parties to the action, or that Mr. Torres had any distinctive racial characteristics different than the parties. Further, there was no exhibition of the child nor any foundation to show that the witness, Mrs. Olk, had any training or education that would qualify her to express an opinion.

We conclude that if demonstrations of a child (as suggested in *Hanawalt, supra)* are to be permitted for the purpose of showing racial characteristics of the child which would exclude the defendant as a father, it can only be done by establishing a sufficient foundation and then only when supported by competent expert opinion.

The defendant complains he was not permitted to make an offer of proof on the resemblance issue and that this was error.

In most instances the trial court should permit an offer of proof either in question and answer form or by a statement of counsel, in the record, of what he believes the testimony would show. The obvious reasons for this rule are (1) to give the trial court a more adequate basis for its evidentiary ruling, and (2) to make a meaningful record for appellate review. However, we believe that there are exceptions to this general rule and in those instances offers of proof can be refused in the exercise of judicial discretion. A trial judge need not, in fact should not, permit offers of proof as to matters that are clearly immaterial, irrelevant, without proper foundation, or by incompetent witnesses.

In this instance it is apparent that the observations of the child and a third person by a witness who was not competent to express an opinion on the subject were immaterial and of no probative value. It was not an abuse of discretion to refuse to permit this offer of proof.

The defendant also argues that there was not sufficient credible evidence to sustain the finding of the trial court.

In paternity cases the burden of proof carried by the state is that the issue must be proved by a clear and satisfactory preponderance of the evidence. Sec. 52.355, Stats.; *State ex rel. Brajdic v. Seber* (1972), 53 Wis. 2d 446, 193 N. W. 2d 43; *Schmidt v. Schmidt* (1963), 21 Wis. 2d 433, 440, 124 N. W. 2d 569; *State ex rel. Kapusta v. Weir* (1960), 12 Wis. 2d 96, 106 N. W. 2d 292.

"The rule in paternity proceedings is well defined in *State ex rel. Kapusta v. Weir* (1960), 12 Wis. (2d) 96, 99, 106 N. W. (2d) 292, in which this court stated:

" 'In *State ex rel. Kurtz v. Knutson* (1958), 5 Wis. (2d) 609, 611, 93 N. W. (2d) 348, this court stated:

" ' "In illegitimacy proceedings the testimony of the complaining witness that she had timely intercourse with the defendant and that she had none with anyone else is sufficient to support a verdict that the defendant is the father of her child, if the jury believed it. *Wille v. State ex rel. Kessler,* 192 Wis. 224, 212 N. W. 260; *State v. Willing,* 259 Wis. 395, 48 N. W. (2d) 236." ' " *State ex rel. Sarnowski v. Fox* (1963), 19 Wis. 2d 68, 70, 119 N. W. 2d 451.

We believe this rule should likewise apply to a review of a trial by the court without a jury.

In a trial to the court, the findings of fact will not be set aside on review by the appellate court if the "judicial mind could on due consideration of the evidence as a whole" reasonably come to the conclusion of the trial court. *State ex rel. Isham v. Mullally* (1961), 15 Wis. 2d 249, 255, 112 N. W. 2d 701; *State ex rel. Brajdic v. Seber, supra.*

A review of the record reveals that the trial court was convinced the defendant was the father of the child. In his decision the trial judge stated:

"The court finds that he is the father of this child that was born to this complainant. No question about it."

There is ample credible evidence in the record to support this finding.

*By the Court.*—Judgment affirmed.