**Major BURRUS, Petitioner-Appellant,**

**v.**

**Warren YOUNG, Superintendent,* and the Attorney General of the State of Wisconsin, Respondents-Appellees.**

No. 85–1768.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1986.

Decided Dec. 17, 1986.

Concurring Opinion Amended March 10, 1987.

Motion for Nonpublication Denied March 10, 1987.

---

* Warren Young was substituted as an appellee for his predecessor in office, Thomas R. Israel, pursuant to Fed.R.App.P. 43(c)(1).

Mark Lukoff, Wis. Public Defender, Milwaukee, Wis., for petitioner-appellant.

Sally L. Wellman, Asst. Atty. Gen., Madison, Wis., for respondents-appellees.

Before CUMMINGS and COFFEY, Circuit Judges, and WILL, Senior District Judge.[1]

WILL, Senior District Judge.

Following a jury trial in the Circuit Court of Milwaukee County, Wisconsin, petitioner Major Burrus was found guilty of first degree murder and first degree sexual assault. Burrus appealed to the Wisconsin Court of Appeals, which affirmed the conviction. Though the court of appeals determined that the trial court had erred in refusing to permit Burrus to introduce certain psychiatric testimony, the court found the error to be harmless beyond a reasonable doubt. After the Wisconsin Supreme Court denied Burrus's petition for review, Burrus filed a petition for a writ of habeas corpus in the district court. The district court, finding no federal constitutional error, denied the writ. We affirm.

I.

The essential facts underlying the charges against Burrus are undisputed. The Wisconsin Court of Appeals summarized them as follows:

On the night of August 1, 1981, Burrus's wife held a surprise birthday party for him at their home. Burrus arrived home at approximately 6:15 p.m. There was testimony that Burrus was drinking gin, whiskey and beer and smoking marijuana between approximately 6:30 and 8:30 p.m. There was testimony that Burrus was not drinking and appeared sober between approximately 9:00 and 11:00 p.m. One of the guests at the party was Anna Marie Weis (Weis). At approximately 11:30 p.m., Burrus and Weis went to the basement of the Burrus home. While in the basement, Burrus sexually assaulted and killed Weis. There was also uncontradicted testimony that Burrus appeared sober after the killing.

*State v. Burrus*, No. 82–576–CR, slip op. at 2–3 (Wis.Ct.App. Nov. 10, 1982 [109 Wis.2d 698, 327 N.W.2d 724 (table)]).

At trial, Burrus raised a defense of intoxication. Under Wisconsin law, intoxication is a defense if it "[n]egatives the existence of a state of mind essential to the crime." Wis.Stat. § 939.42. Burrus contended that he was too intoxicated at the time of the killing to form the requisite specific intent for first degree murder. The prosecution countered with evidence that Burrus appeared sober shortly after the killing. In response to this evidence, Burrus sought to introduce a psychiatrist, Dr. Basil Jackson, to testify on the sobering effects of trauma. As defense counsel stated in his offer of proof to the trial court:

Dr. Jackson could, based on his experience in treating alcoholics and people who commit certain acts under the influence of intoxicants and drugs, testify that it is usual and typical for such persons who are involved in a traumatic experience—and he mentioned one, a car accident—who have been drinking heavily to, in effect, sober up and to behave as though they are not under the influence of any drugs or alcohol.

The trial court sustained the prosecution's objection to the proposed testimony. Rea-

1. The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

soning that Dr. Jackson was no more qualified than a lay person on the question of whether a traumatic incident may cause an intoxicated person to sober up, the trial court ruled the proposed expert testimony inadmissible. "The gloss of an expert title being attached to such an opinion simply is not justified based on the offer of proof submitted," the court concluded.

At the close of the evidence, the trial court instructed the jury on the elements of the defense of intoxication.[2] Defense counsel was allowed to argue his theory of the sobering effect of trauma to the jury, and he did so. "[B]ased on your experience and your knowledge as people in our society," he submitted, "you know that when you have been drinking if you see a shocking incident—if I have an accident, if a friend of yours gets hurt that the mood you're in changes dramatically.... That you're shocked into sobriety."

On appeal to the Wisconsin Court of Appeals, Burrus maintained that his constitutional right to present a defense was violated by the exclusion of Dr. Jackson's testimony. The court of appeals disagreed. Though the testimony was admissible under Wisconsin Rule of Evidence 907.02,[3] the court found, its submission to the jury could not have affected the outcome of the case. Burrus was not prevented from raising the defense of intoxication or from arguing his theory of defense to the jury. Moreover, the court concluded, the evidence of Burrus's consumption of drugs

and alcohol prior to the killing was "at best vague, contradictory and inconclusive," whereas evidence of his post-killing sobriety was "clear and uncontradictory." *State v. Burrus*, No. 82–576–CR, slip op. at 4–5 (Wis.Ct.App. Nov. 10, 1982 [109 Wis.2d 698, 327 N.W.2d 724 (table) ] ).

The district court, in denying Burrus's petition for writ of habeas corpus, accepted the determination of the Wisconsin Court of Appeals that Dr. Jackson's proffered testimony was admissible under Wisconsin law. Proceeding to the constitutional question, the district court found that Burrus's fundamental right to a fair trial had not been violated. *Burrus v. Israel*, No. 83–C–133, slip op. (E.D.Wis. April 24, 1985).

## II.

We begin with several well-established principles regarding habeas corpus jurisdiction under 28 U.S.C. § 2254. A federal court may not grant habeas relief to a petitioner in state custody unless the custody violates federal statutory or constitutional law. *Mosley v. Moran*, 798 F.2d 182, 185 (7th Cir.1986). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). Ordinarily, an evidentiary error in the state courts will not rise to the level of a constitutional violation. As this court has ex-

---

**2.** The jury was instructed as follows:

The defense of intoxication is an issue in this case. The Criminal Code of Wisconsin provides that an intoxicated condition is a defense if such condition negatives the existence of a state of mind essential to the crime. Ordinarily, intoxication will not relieve a person from responsibility for his criminal acts. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if at the time of the commission of the alleged criminal act he was so intoxicated that he was unable to form the essential intent or have the essential mental state.

In this case, the defendant is charged with the crime of first degree murder, of which one of the essential elements is the intent to kill. The defendant claims that at the time of the alleged offense his condition from the use of intoxicating liquor and drugs was such that he did not form such intent. If the defendant,

because of his condition, was incapable of forming and therefore did not form the intent to kill, then you must not find him guilty of first degree murder as charged in the Information. If you have any reasonable doubt as to whether or not he was so intoxicated, you must give the defendant the benefit of that doubt and find him not guilty of first degree murder. This defense does not apply to the lesser included offense of second degree murder.

**3.** Rule 907.02 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Wis.Stat. § 907.02.

plained, "Because the admissibility of evidence in state court is a matter of state law, evidentiary questions are not subject to federal review under § 2254 unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right." *United States ex rel. DiGiacomo v. Franzen*, 680 F.2d 515, 517 (7th Cir.1982).

■ Burrus contends that the trial court's ruling excluding Dr. Jackson's testimony denied him his federally-protected right to a fundamentally fair trial. To decide this question, we need not consider the correctness of the trial court's ruling as a matter of Wisconsin evidence law. As the district court recognized, and as all parties to this appeal agree, we are bound by the Wisconsin Court of Appeals' interpretation of state law. The only question we need decide is whether Burrus suffered a deprivation of any right protected by the fourteenth amendment.

■ It is true that an accused has a fundamental right to present witnesses in his own defense. *See, e.g., Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). Unlike the situation in *Chambers* and *Washington*, however, the exclusion of Dr. Jackson's testimony did not prevent Burrus from presenting his theory of defense. To the contrary, Burrus's counsel was permitted to argue to the jury that the killing, in effect, shocked Burrus into sobriety. Though the jurors were not persuaded, we are satisfied that they would not have reached a different verdict had they been exposed to Dr. Jackson's testimony.

■ The fourteenth amendment's guarantee of fundamental fairness in criminal proceedings does not require a trial court to permit any proposed defense expert to take the stand. In this case, the prosecution did not produce an expert, necessitating a defense rebuttal. The court thoroughly instructed the jury on the defense of intoxication. There was over-whelming evidence from which the jury could find Burrus capable of forming a specific intent at the time of the killing. Under these circumstances, we cannot say that the exclusion of Dr. Jackson's testimony was so arbitrary or irrational as to deny Burrus due process.

For the reasons stated, the district court's judgment denying Burrus's petition for writ of habeas corpus is

AFFIRMED.

COFFEY, Circuit Judge, concurring.

I agree with the Majority that the writ of habeas corpus should not be granted but I write singly because I am convinced that the trial court did not commit error in excluding the psychiatric testimony under Wisconsin law and further because I believe this court is obligated to correct its own error in *Hughes v. Mathews*, 576 F.2d 1250 (7th Cir.1978), concerning the admissibility of psychiatric testimony under Wisconsin law.

I

In December 1981, following a trial in the Milwaukee County, Wisconsin, Circuit Court, a jury found Burrus guilty of one count of first degree murder and one count of first degree sexual assault. The court sentenced Burrus to consecutive terms of life imprisonment and twenty years on the murder and sexual assault convictions respectively.

The murder and sexual assault crimes charged against Burrus arose out of events occurring on the night of August 1, 1981. The Wisconsin Court of Appeals summarized the pertinent facts as follows:

"On the night of August 1, 1981 Burrus's wife held a surprise birthday party for him at their home. Burrus arrived home at approximately 6:15 p.m. There was testimony that Burrus was drinking gin, whiskey and beer and smoking marijuana between approximately 6:30 and 8:30 p.m. There was testimony that Burrus was not drinking and appeared sober between approximately 9:00 and 11:00

p.m. One of the guests at the party was Anna Marie Weis (Weis). At approximately 11:30 p.m., Burrus and Weis went to the basement of the Burrus home. While in the basement, Burrus sexually assaulted and killed Weis. There was also uncontradicted testimony that Burrus appeared sober after the killing."
*State v. Burrus*, No. 82–576–CR, slip op. at 2–3 (Wis.Ct.App. November 10, 1982 [109 Wis.2d 698, 327 N.W.2d 724 (table)]). At trial, Burrus contended that he was so intoxicated from alcohol and marijuana that he was unable to form the specific intent necessary for a conviction of the crime of first degree murder. Thus Burrus attempted to capitalize on the testimony of witnesses that he had not only been drinking alcohol, but had also been smoking marijuana at the party and was so intoxicated from the alcohol and marijuana that he was unable to form the specific intent required. In an effort to explain why he appeared to be sober following the assault and murder, even though he claimed to be so intoxicated at the time of the murder that he maintained he was not capable of forming the intent to murder, Burrus' counsel attempted to introduce testimony of one Dr. Basil Jackson, a local psychiatrist, concerning the effect of trauma upon an intoxicated person's behavior. The defense counsel stated:

"This is in the nature of an offer of proof regarding the testimony of the psychiatrist, Basil Jackson, who made observations and tested Mr. Burrus in connection with this case. As recently as Saturday, one of the psychologists from Dr. Jackson's office made further tests of Mr. Burrus. Your Honor, if the court was so disposed to hear Dr. Jackson testify, we would submit that Dr. Jackson would testify regarding the effects of the incident on Mr. Burrus' sobriety. I think one of the thrusts of the state's questioning and evidence in this case has been to establish that because of Mr. Burrus'

acts subsequent to the killing of the victim in this case, that it indicates that the defendant was, in fact, sober and not under the influence of any drugs or alcohol at the time the offense was committed. Dr. Jackson could, based on his experience in treating alcoholics and people who commit certain acts under the influence of intoxicants and drugs, testify that it is usual and typical for such persons who are involved in a traumatic experience—and he mentioned one, a car accident—who have been drinking heavily to, in effect, sober up and to behave as though they are not under the influence of any drugs or alcohol."

After the state objected to the admission of Dr. Jackson's testimony on the ground that it was "nothing more than speculative," the following colloquy occurred between defense counsel[1] and the court:

DEFENSE COUNSEL: Well, Judge, the defense is not going to phrase its questions as though Mr. Burrus had a certain amount to drink. That obviously is for the trier of fact. It's an issue in this trial just how much Mr. Burrus did consume. But I think it's—it should be allowable for us to question him regarding the effects, if in fact it is true that Mr. Burrus was under the influence as some of the witnesses have indicated in the trial. There is a basis for that opinion being rendered if the trier of fact, the jury in this case, wants to take that testimony as true.

THE COURT: Well, what makes a psychiatrist any more an expert on that topic than any lay person who has observed persons under the influence so-called sober up when involved in a traumatic situation?

DEFENSE COUNSEL: Well, Judge, in my own personal experience, I have been around people who have had a lot to drink, but I don't think I've ever been in a situation where I've seen it and I, in

---

**1.** At trial, Burrus was represented by Barry Slagle and John Ladky, both Assistant State Public Defenders. On appeal in the Wisconsin Courts and in the habeas proceedings in the federal courts Burrus has been represented by Mark Lukoff, also from the Wisconsin Public Defender's Office.

fact, haven't studied it. So I think I'd be in the same position as one of the jurors in that I think it would be helpful to learn about that from somebody who has, in fact, studied instances of that kind of thing happening.

THE COURT: Well, what would the testimony be as to his study?

DEFENSE COUNSEL: The fact—In my discussions with Dr. Jackson, he indicated that he has treated alcoholics and other persons who have been under the influence of alcohol and drugs and have, in effect, lost the effects of those—of the drugs and alcohol when shocking things happen or a shocking experience."

The trial judge sustained the state's objection to Dr. Jackson's testimony, stating:

"The offer of proof includes *no evidence which would establish that Dr. Jackson is to any extent more than a lay person or even a police officer who's been exposed to people in an intoxicated condition on a number of occasions. He's not any more of an expert than anybody else on that question of whether somebody may sober up or show signs of what is loosely and commonly referred to as sobering up after a traumatic incident takes place.* It's simply not couched in terms of expert testimony that would require a psychiatrist to give it. The gloss of an expert title being attached to such an opinion simply is not

justified based on the offer of proof submitted."

(Emphasis added). The trial court instructed the jury on both first and second degree murder and gave an instruction on the defense of voluntary intoxication.[2] In his closing argument, Burrus' counsel argued his theory that "when you have been drinking if you see a shocking incident—if I have an accident, if a friend of yours gets hurt that the mood you're in changes dramatically.... [Y]ou're shocked into sobriety."

Burrus appealed his convictions, and the Wisconsin Court of Appeals ruled that the trial court erred in excluding the proffered testimony of the psychiatrist Dr. Jackson, reasoning that:

"The testimony pointing to the sobering effect of trauma was to afford a basis in the evidence from which Burrus could argue to the jury that his post-killing sobriety did not contradict his claimed pre-killing intoxication. The proffered evidence was relevant because it served to make the existence of [the] defendant's intoxication at the time of the killing more probable than it would [sic] without that the evidence.

Sec. 904.01, Stats. We do not agree with the trial court's finding that the sobering effect of trauma is commonly within the knowledge of jurors."

Although the Wisconsin appellate court found the exclusion of Dr. Jackson's testi-

**2.** Section 939.42 of the Wisconsin Statutes provides in part:

"An intoxicated or drugged condition of the actor is a defense only if such condition: ... (2) negatives the existence of a state of mind essential to the crime."

The court's instruction on voluntary intoxication provided as follows:

"The defense of intoxication is an issue in this case. The Criminal Code of Wisconsin provides that an intoxicated condition is a defense if such condition negatives the existence of a state of mind essential to the crime. Ordinarily, intoxication will not relieve a person from responsibility for his criminal acts. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if at the time of the commission of the alleged criminal act he was so intoxicated that he was unable to form the

essential intent or have the essential mental state.

In this case, the defendant is charged with the crime of first degree murder, of which one of the essential elements is the intent to kill. The defendant claims that at the time of the alleged offense his condition from the use of intoxicating liquor and drugs was such that he did not form such intent. If the defendant, because of his condition, was incapable of forming and therefore did not form the intent to kill, then you must not find him guilty of first degree murder as charged in the Information. If you have any reasonable doubt as to whether or not he was so intoxicated, you must give the defendant the benefit of that doubt and find him not guilty of first degree murder. This defense does not apply to the lesser included offense of second degree murder."

mony to be erroneous, the court noted that the evidence of Burrus' intoxication before the killing was "at best vague, contradictory and inconclusive" while his sobriety after the killing is "clear and uncontradictory." The court ruled the trial court's error in excluding Dr. Jackson's testimony was harmless, reasoning that the "jury would not conclude he [Burrus] was so intoxicated that he was unable to form the requisite intent to commit first degree murder even if the trial court permitted the expert to testify." The Wisconsin Supreme Court denied Burrus' petition to review the decision of the Wisconsin Court of Appeal's affirming his convictions.

Burrus subsequently petitioned the United States District Court for the Eastern District of Wisconsin for a writ of habeas corpus, arguing that the exclusion of Dr. Jackson's proffered testimony violated the Sixth and Fourteenth Amendments because it was prejudicial to a degree that it denied him fundamental fairness in his trial. According to Burrus, the absence of the expert's testimony prevented him from demonstrating to the jury through expert testimony why he appeared sober after the killing. The district court denied the petition, reasoning that Burrus was not precluded from presenting his theory of the sobering effect of trauma as part of his defense. The district court noted that the jury was instructed on the defense of voluntary intoxication and further, Burrus' attorney was permitted to argue in his closing argument that the murder and sexual assault crimes could have had a sobering effect on Burrus. "Because Burrus was able to present his defense of intoxication to the jury in most respects, the [district] court rule[d] that his Sixth and Fourteenth Amendment right to a fair trial were not violated." Dist.Ct.Mem. op. at 17. Burrus appeals the denial of his petition for a writ of habeas corpus, arguing that the exclusion of the expert testimony on the sobering effects of trauma "rises to the level of a Sixth Amendment violation because it was so prejudicial as to deny fundamental fairness to the trial, violating the due process clause."

II

As this court has previously pointed out, a federal court's habeas corpus jurisdiction under 28 U.S.C. § 2254 is limited to consideration of questions of federal unconstitutional custody. Specifically, we held in *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1014 (7th Cir.1984) (quoting *United States ex rel. DiGiacomo v. Franzen*, 680 F.2d 515, 517 (7th Cir.1982)):

"Under 28 U.S.C. § 2254, a federal court is authorized to issue a writ of habeas corpus in behalf of a person in custody under the judgment of a state court 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws and treaties of the United States.' Because the admissibility of evidence in state court is a matter of state law, evidentiary questions are not subject to federal review under § 2254 unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right."

Other circuits and the Supreme Court agree that a federal or constitutional question must be presented before a federal court reviews the admissibility of evidence under state law. "In order to establish the denial of due process, the petitioner must prove that the asserted error was so 'gross,' 'conspicuously prejudicial,' or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process." *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.1976), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1977) (citations omitted). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). Thus, "[w]e do not sit as a super state supreme court to review error under state law." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir.1983). Accordingly, the issue before this court is not whether the Wisconsin Appellate Court

was correct in ruling that Dr. Jackson's testimony was admissible although its exclusion was harmless error, as the Majority contends, but whether or not the trial court's exclusion of his proffered "expert" testimony was a "gross" or "conspicuously prejudicial" error or of such magnitude that it "fatally infected the trial" and thus failed to afford Burrus the fundamental fairness mandated by the due process clause of the United States Constitution.

The petitioner argues that the exclusion of evidence (Dr. Jackson's proferred testimony) that is admissible under state law "rises to the level of a Sixth Amendment violation because it was so prejudicial as to deny fundamental fairness to the trial, violating the due process clause." Burrus also asserts that the exclusion of Dr. Jackson's testimony was not harmless error, but rather that "the erroneous exclusion of Dr. Jackson's testimony is devastating. The jury was not permitted to hear the testimony of the only witness who could explain why Major Burrus appeared sober after the traumatic incidents in question." The respondent argues to the contrary that "[t]here was no constitutional error in excluding the proffered evidence because it was not relevant, reliable or competent expert testimony which would help the jury to understand the evidence at trial or to determine an issue at trial."

Judge Cummings, Judge Will and I conclude, as did the trial court, Judge Curran, in his excellent opinion, that the exclusion of Dr. Jackson's testimony was not so arbitrary and capricious as to deprive the defendant of "the fundamental fairness which is the essence of due process." However, I believe it is necessary to review the reasoning the state trial judge enunciated for excluding the psychiatric evidence in order that we might evaluate the defendant's allegation of constitutional error. Also, we must not lose sight of the fact that it was this court's misconstruction of Wisconsin evidence law in *Hughes v. Mathews*, 576 F.2d 1250 (7th Cir.1978), that is responsible for the confusion which still exists in the federal courts regarding the admissibility of psychiatric testimony under Wisconsin law. I believe it is imperative for us to correct the prior error of this court at the earliest opportunity. In *Hughes*, a similar habeas corpus proceeding, this court did find it necessary and did not hesitate to analyze Wisconsin evidence law but misconstrued the application of Wisconsin evidence law. Thus, as I proceed to review the defendant's appeal and to correct our previous interpretation of Wisconsin evidence law, I examine the defendant's allegations in light of the trial record.

When a trial court excludes evidence on the basis of its interpretation of state law, we must examine the law the trial court relied upon in order that we might properly determine whether the reasoning of the state trial judge in excluding this evidence was proper. In this process we must not only look at the problem from the defendant's point of view, but must accord proper weight to the state's interest in moving to exclude such evidence. Initially we must properly interpret that state law before we are able to balance the defendant's interest in the excluded evidence against the state's interest. The Wisconsin Supreme Court in *Steele v. State*, 97 Wis.2d 72, 294 N.W.2d 2 (1980), stated that in *Hughes* this court (U.S. Court of Appeals, 7th Circuit) had "confused the purpose for which psychiatric testimony is relevant and competent, ... with those in which its competency, relevancy, usefulness, and probativeness is highly suspect." *Steele*, at 96, 294 N.W.2d 2. Thus, I believe it is incumbent upon this appellate court to correct a prior error at its first opportunity with a thorough and exhaustive examination of the applicable state (Wisconsin) case law in order that we might clarify our misconstruction of that state law and thus determine whether the trial court's exclusion of the challenged psychiatric testimony was proper. The Majority for some reason refuses to address the issue concerning the exclusion of the evidence on the sobering effect of trauma, stating:

"Burrus contends that the trial court's ruling excluding Dr. Jackson's testimony

denied him his federally-protected right to a fundamentally fair trial. To decide this question, we need not consider the correctness of the trial court's ruling as a matter of Wisconsin evidence law. As the district court recognized, and as all parties to this appeal agree, we are bound by the Wisconsin Court of Appeals's interpretation of state law. The only question we need decide is whether Burrus suffered a deprivation of any right protected by the fourteenth amendment."

In refusing to address the trial court's ruling on the acceptance of psychiatric testimony dealing with the question of intent as related to the alleged defense of post-crime trauma, the Majority perpetuates the confusion this court has created in its faulty *Hughes* analysis wherein it presumed that psychiatric testimony was generally admissible under Wisconsin law. Thus, the Majority's reluctance to address this issue in essence approves of and needlessly continues this misapplication of Wisconsin law in the federal system. Likewise, in order to understand the relation of the excluded evidence to the defendant's case, and thus the constitutional significance its exclusion might have had, in contrast to the Majority, it is, I believe, imperative that we also examine the criminal intent to state law concerning the crime(s) charged and the defenses raised. In short, when reviewing a federal writ of habeas corpus we are frequently called upon to interpret state law and in that manner are properly performing our function as a federal appellate court. I am confident that this recitation of state law will be helpful, but at the same time, I am fully cognizant of the fact that case law is very clear in stating that federal interpretation of a state's law is not binding on the respective state absent a federal or constitutional question.

Furthermore, it is interesting to note that the state appellate court failed to address the question of state law presented, which we must examine as part of our analysis of the writ for habeas corpus. In this case, the Wisconsin Court of Appeals did not address the specific reasons prof-

fered by the state trial judge in his exclusion of Dr. Jackson's testimony concerning the sobering effects of trauma. The state trial court excluded Dr. Jackson's testimony because the offer of proof made by the defendant failed to establish that Dr. Jackson was "anymore of an expert than anybody else or that question of whether somebody may sober up or show signs of ... sobering up after a traumatic incident takes place." It is unclear why the Wisconsin Court of Appeals failed to analyze and discuss Dr. Jackson's qualifications as an expert on the sobering effects of trauma, especially since the trial judge made it quite clear that he excluded the testimony solely on the basis of the defendant's failure to qualify Dr. Jackson as an expert in the area of post crime trauma. The Court of Appeals' opinion merely stated that the evidence was relevant to Burrus' defense ruling that, "We do not agree with the trial court's finding that the sobering effect of trauma is commonly within the knowledge of jurors." *State v. Burrus*, No. 82–576–CR, slip op. at 4 (Wis.Ct.App. Nov. 10, 1982 [109 Wis.2d 698, 327 N.W.2d 724 (table)]). The record fails to reveal that the trial judge ever made a specific finding of this nature "that the sobering effect of trauma is commonly within the knowledge of jurors," much less that Dr. Jackson's proposed testimony was excluded on the basis of such a finding. Rather, the trial judge excluded the testimony because, "The gloss of an expert title being attached to such an opinion simply is not justified based on the offer of proof submitted." But in spite of this limited expression of intent by the trial court, the Wisconsin Appellate Court held it was error to exclude Dr. Jackson's proffered testimony without analyzing whether Dr. Jackson was in fact qualified to present such alleged expert testimony. Under Wisconsin law, merely reciting that a witness is an expert on a particular subject matter does not qualify him to testify as an expert. The admission of expert testimony is governed by § 907.02, Wis.Stats., providing:

"Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

"Whether [an expert witness'] testimony should be admitted into evidence is a matter left to the trial court's discretion." *Maci v. State Farm Fire & Casualty Co.*, 105 Wis.2d 710, 314 N.W.2d 914, 920 (Ct. App.1981). The Wisconsin Supreme Court has explained that in determining whether a witness is qualified as an expert, "[i]t is the particular qualification of the witness in relation to the particular issue which should control, *rather than the label of a profession or trade." Karl v. Employers Ins. of Wausau*, 78 Wis.2d 284, 254 N.W.2d 255, 261 (1977) (quoting *Roberts v. State*, 41 Wis.2d 537, 551, 164 N.W.2d 525, 532 (1969)) (emphasis added). Indeed, the Wisconsin Supreme Court has properly bemoaned the fact and I wholeheartedly agree that some individuals accorded the label of psychiatrist have demonstrated "a marked propensity ... to tailor their testimony to the particular client whom they represent." *Steele v. State*, 97 Wis.2d 72, 97, 294 N.W.2d 2 (1980).

The issue the defendant Burrus attempted to address through the local psychiatrist Dr. Jackson's testimony was whether one who commits a brutal, violent beating and sexual assault (Burrus) can appear sober, immediately following the commission of the crimes because of the alleged trauma caused in perpetrating the crimes, even though he claims to have been so intoxicated immediately prior to and/or at the time of the beating and sexual assault that he was unable to form the specific intent required to commit the crime of first degree murder. Thus, this court should consider the purported qualification of Dr. Jackson to testify as an expert concerning the alleged effect of the trauma on an individual (Burrus) after committing a violent, brutal crime who claimed to have been so intoxicated at the time of the crime that he was unable to form the specific intent required to convict for first degree murder. To evaluate whether Burrus established that Dr. Jackson was qualified as an expert on the effect of post-crime trauma on intoxicated persons, it is necessary to review Burrus' offer of proof.

At trial, Burrus' counsel made the following statement to the court:

"This is in the nature of an offer of proof regarding the testimony of the psychiatrist, Basil Jackson, who made observations and tested Mr. Burrus in connection with this case. As recently as Saturday, one of the psychologists from Mr. [sic] Jackson's office made further tests of Mr. Burrus. Your Honor, if the Court was so disposed to hear Dr. Jackson testify, we would submit that Dr. Jackson would testify regarding the effects of the incident on Mr. Burrus' sobriety. I think one of the thrusts of the State's questioning and evidence in this case has been to establish that because of Mr. Burrus' acts subsequent to the killing of the victim in this case, that it indicates that the defendant was, in fact, sober and not under the influence of any drugs or alcohol at the time the offense was committed. Dr. Jackson could, based on his experience in treating alcoholics and people who commit certain acts under the influence of intoxicants and drugs, testify that it is usual and typical for such persons who are involved in a traumatic experience—and he mentioned one, a car accident—who have been drinking heavily to, in effect, sober up and to behave as though they are not under the influence of any drugs or alcohol."

On appeal and during oral argument before this court, the following colloquy transpired between the court and the defense attorney:

"Q. Has that type of testimony been approved by the American Psychiatric Association?

A. I don't know if it has or has not. The qualifications of the expert to testify were never challenged...."

Q. He wouldn't have to be if he wasn't allowed to testify. He wouldn't have to challenge it.

A. He wasn't allowed to testify because the Wisconsin trial court held that the evidence was irrelevant.

Q. So therefore, there'd be no reason to challenge his qualifications on that point.

A. His qualifications were stipulated before the offer of proof, your honor."

Contrary to the misleading statement of Burrus' appellate counsel (Lukoff) at oral argument upon questioning by the court stated that Dr. Jackson's qualifications as an expert were never challenged in the trial court and that his qualifications were stipulated to prior to the offer of proof,[3] the Wisconsin trial court did question Dr. Jackson's status as an expert on the effect of trauma on intoxicated individuals and the prosecuting attorney objected to Dr. Jackson's proffered testimony on the grounds that it "would clearly be nothing more than speculative.... the testimony of Dr. Jackson would be such as to be looking into a crystal ball and gleaning things from the evidence when, in fact, the jury is the trier of fact, not Dr. Jackson." The trial court excluded his testimony reasoning:

"The offer of proof includes no evidence which would establish that Dr. Jackson is to any extent more [sic] than a lay person or even a police officer who's been exposed to people in an intoxicated condition on a number of occasions. *He's not any more of an expert than anybody else on that question of whether somebody may sober up or shows signs of what is loosely and commonly referred to as sobering up* after a traumatic inci-

dent takes place. It's simply not couched in terms of expert testimony that would require a psychiatrist to give it. The gloss of an expert to the [sic] being attached to such an opinion simply is not justified based on the offer of proof submitted."

(Emphasis added). Thus, the trial court, after the prosecution's proper objection, clearly considered and called to the attention of the respective counsel Dr. Jackson's utter lack of qualifications as an expert on the sobering effects of trauma and excluded the reception of that evidence specifically on the basis that the defendant's offer of proof failed to establish that Dr. Jackson was any more of an expert on the sobering effects of trauma than the members of the jury themselves.

An offer of proof:

"enables a trial judge to determine whether the evidence would be available for any purpose, and ensures that the record will be sufficiently detailed to permit appraisal by an appellate court of the scope and effect of the ruling, so that it can determine whether the trial court committed reversible error in excluding the evidence."

*United States ex rel. Veal v. DeRobertis,* 693 F.2d 642, 647 (7th Cir.1982) (quoting Weinstein's Evidence ¶ 103[03] at 103–27 (1977)). *See also State ex rel. Schlehlein v. Duris,* 54 Wis.2d 34, 194 N.W.2d 613 (1972). "[T]he offer will be used, not only to determine if the error was harmless, but if there was any error at all." Wright & Graham, § 5040, at 212. Federal Rule of Evidence 103(a)(2) (which is identical to Wisconsin Rule of Evidence 901.03(1)(b)):

"only requires that the offer include 'the substance of the evidence.' While that

---

**3.** At oral argument counsel for Burrus stated: "The qualifications of the expert to testify were never challenged, that, he was unable to give this particular ... [h]is qualifications

were stipulated before the offer of proof your honor."
The trial court record does not contain a stipulation as to the qualifications of the expert.

may suffice to preserve the point for review, *much more is required if the offeror intends to show that there was, in fact, error.* For example, if the admissibility of the evidence turns on the existence or non-existence of a preliminary fact, the offeror must either have already proved the existence of the fact or it must be included in his offer."

Wright & Graham, § 5040 at 212 (emphasis added). The offer "is designed to resolve doubts as to what testimony the witness would have in fact given. . . ." Fed.R.Evid. 103 Advisory Committee Notes. "The offer of proof need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier is urged to adopt." *Milenkovic v. State,* 86 Wis.2d 272, 272 N.W.2d 320, 326 (Ct.App.1979).

In Wisconsin, "In most instances the trial court should permit an offer of proof either in question and answer form or by a statement of counsel, in the record, of what he believes the testimony would show." *Duris,* 54 Wis.2d at 39, 194 N.W.2d 613. Although either form of an offer of proof is acceptable, the court in *Milenkovic* stated:

"We strongly urge trial courts to utilize [the question and answer form] whenever practicable. We conclude that offers of proof made in this manner will significantly reduce the possibility that trial counsel will inadvertently fail to offer to prove a crucial fact upon which the conclusion or inference which he seeks to establish necessarily depends. We also believe such a procedure will assist the trial court and any reviewing court in determining whether the evidentiary hypothesis can actually be sustained cr the offer is overstated."

272 N.W.2d at 326 n. 10.

In the present case, Burrus' trial attorney chose to make an offer of proof through a statement of what he stated Dr. Jackson would testify to, rather than placing Dr. Jackson on the witness stand out of the jury's presence and conducting the offer of proof, in question and answer form. The defendant's counsel stated in his offer of proof that Dr. Jackson's proposed testimony was based on his "experience in treating alcoholics and people who commit certain acts under the influence of intoxicants and drugs, . . . that it is usual and typical for such persons who are involved in a traumatic experience—and he mentioned one, a car accident—who have been drinking heavily to, in effect, sober up and to behave as though they are not under the influence of any drugs or alcohol." In response to a question from the court concerning Dr. Jackson's alleged study of the sobering effect of trauma, the counsel for the defendant essentially reiterated his prior offer of proof, making the nebulous and innocuous statement that Dr. Jackson had treated persons who have been under the influence of alcohol who have "lost the effects" of drugs and alcohol "when shocking things happen" without providing any details much less any specific information as to when, where or under what circumstances they allegedly "lost the effects" of drugs and alcohol. It is interesting to note that Burrus' counsel, in arguing for the admissibility of Dr. Jackson's alleged expert testimony, never even claimed that Burrus, the perpetrator of the crime, suffered any type of wound, injury, or blow to the head, or trauma (comparable to the injuries one would receive in a car accident, the example he referred to in the offer of proof) that would allegedly induce the appearance of sobriety.

Further, the defense trial attorney's ill-prepared offer of proof failed to assert that Dr. Jackson had ever personally observed the alleged sobering effect of trauma upon an individual under the influence of alcohol. Instead, the offer of proof merely states that he (Dr. Jackson) has treated individuals who supposedly reported to him during

some undisclosed period of time after an allegedly traumatic incident that they had sobered up from the effects of drugs and alcohol following the traumatic event. The defense attorney's recitation of Dr. Jackson's anticipated testimony thus was not based on Dr. Jackson's own personal knowledge, much less personal observation of the effect of trauma on intoxicated persons, but rather on second-hand reports from individuals who allegedly reported their experiences to him after an unknown period of time following the purported traumatic event. The offer of proof also failed to assert when he allegedly treated these individuals (immediately thereafter, one hour later, one day later, one week later or what period of time after the purported trauma) much less the number of persons he has treated under the influence of intoxicants or the percentage of intoxicated individuals he has allegedly treated who claimed to have sobered up following a traumatic event. According to Burrus' offer of proof, Dr. Jackson has treated "alcoholics and other persons who have been under the influence of alcohol"—the use of the plural words "alcoholics" and "persons" infers more than one, but fails to disclose whether Dr. Jackson has treated one, two, ten, a hundred or a thousand alcoholics. Further the offer of proof failed to establish that Dr. Jackson has done any reading of any accepted scientific or medical literature, material, or treatise or conducted any research or tests on the alleged sobering effect of trauma on intoxicated persons. Without advising the court of the number of individuals, if any, Dr. Jackson has observed or purportedly treated concerning the effect of immediate post-crime trauma during intoxication or whether he has done any reading or research in the area, it was impossible for the court to determine whether he has sufficient (or any) experience or specialized knowledge in the field of the effect of immediate post-crime trauma on an intoxicated person to even attempt to justify his theory that it is "usual and typical" for intoxicated persons to sober up after a traumatic experience.

To properly evaluate whether Burrus' counsel's offer of proof qualified Dr. Jackson as an expert at Burrus' trial, this court should also take into account the elements of the defense of voluntary intoxication in the State of Wisconsin. Section 939.42 of the Wisconsin Statutes provides in part:

"An intoxicated or drugged condition of the actor is a defense only if such condition:

. . . . .

(2) Negatives the existence of a state of mind essential to the crime."

The Wisconsin Criminal Pattern Jury Instruction on voluntary intoxication provides:

"In deciding whether the defendant acted with the [intent to kill], you must consider the evidence that he was intoxicated at the time of the alleged offense. If the defendant was so intoxicated that he did not [intend to kill], you must find him not guilty of [first degree murder]. Before you may find the defendant guilty, the State must prove by evidence that satisfies you beyond a reasonable doubt that the defendant [intended to kill]."

Wis. Jury Instruction-Criminal 765 (revised April 1984). In order to successfully assert the defense of voluntary intoxication in the State of Wisconsin, as Burrus attempted to do, "it is not enough for a defendant to establish that he was under the influence of intoxicating beverages. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite to the commission of the crime charged." *State v. Guiden*, 46 Wis.2d 328, 174 N.W.2d 488, 490 (1970).

"The 'intoxicated or drugged condition' to which the statute refers is not the condition of alcohol-induced incan-

descence or being well-lit that lowers the threshold of inhibitions or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime."

*Id.* (quoted with approval, *State v. Strege*, 116 Wis.2d 477, 343 N.W.2d 100, 104 (1984)).[4] Burrus' offer of proof also failed to establish the alleged level of intoxication of those individuals Dr. Jackson claims sobered up immediately after a shocking experience (traumatic event), and further failed to differentiate between a lesser level of intoxication and the "degree of complete drunkness which renders a person incapable of forming an intent" required by Wisconsin law in order for a defendant to claim that voluntary intoxication rendered him incapable of forming the intent to kill. If the people Dr. Jackson claims sobered up after undergoing a trauma were only mildly intoxicated at the time of an alleged traumatic experience, their reaction might very well be totally different from the reaction of an individual who is so utterly intoxicated that he is incapable of forming the specific intent required for a conviction of the heinous crime of murder in the first degree. Taking into consideration the totally inadequate offer of proof the trial court had before it, there was no way of ascertaining the degree of intoxication of those individuals allegedly treated by Dr. Jackson. Thus, it is impossible to determine whether the alleged reaction to an alleged traumatic experience of those persons purportedly treated by Dr. Jackson would be similar to Burrus' alleged response, since to prevail on his voluntary intoxication defense, he must establish that the effect of alcohol on his mind was "so severe that he was 'utterly incapable' of

forming the intent to kill." *Jones v. State*, 69 Wis.2d 337, 230 N.W.2d 677, 683 (1975).

Furthermore, the only example of a traumatic experience that could cause intoxicated individuals to sober up cited in the offer of proof was a car accident. The offer of proof made no reference to whether one committing an assault and sexual attack when the perpetrator escapes the encounter without physical injury is the type of trauma that can produce the appearance of sobriety in an intoxicated person. An automobile accident involves an experience totally unrelated, separate and distinct from the alleged type of trauma Burrus allegedly experienced after committing the crimes of violent sexual assault, brutal beating, and killing. Assuming that a car accident with an accompanying severe physical impact to the cranial area or other member of the body (e.g., painful fracture of arm, leg, shoulder) might very conceivably have what resembles a temporary sobering effect on an intoxicated individual, I believe that a trauma of the nature referred to in the preceding sentence incurred in an auto accident is entirely separate, distinct and different from any speculative trauma that might follow the commission of a sexual assault and killing. The reference to a car accident which frequently involves a physical injury to the body as referred to herein also ofttimes has an accompanying psychological impact to the mind and body in the nature of nerve response to the accident and the entry into a state of shock resulting from the physical impact which may in certain instances explain what resembles a temporary sobering effect. I fail to understand how sexually assaulting and physically beating another person to death in the absence of the perpetrator of the crimes receiving any physical blow to his head or body[5] of the severity

---

4. When the Wisconsin Jury Instruction Committee revised the voluntary intoxication instruction in 1984, it obviously was aware of and intended to incorporate the Wisconsin Supreme Court's interpretation of the phrase "intoxicated or drugged" condition in *Guiden* and *Strege*.

5. According to Burrus' statement given to the police following his arrest, when Burrus attempted to make sexual advances upon his victim, she attempted to resist his advances by swinging a hammer at him. He caught the hammer in his hand and overpowered her and

that would induce shock would in any way be analogous, much less similar, to the physical injury that one might receive in an auto accident. Thus the example referred to in the offer of proof is by its own terms highly suspect in that it is very unlikely that an individual who commits a sexual assault and fatal beating would experience a similar type of trauma to one who has been injured in an automobile accident. Without knowing whether the individuals allegedly treated or allegedly observed by Dr. Jackson suffered a trauma of any nature, much less a trauma similar to the one allegedly experienced by Burrus (allegedly occurring after inflicting a fatal beating and committing a sexual assault on his victim). Thus, his proffered testimony would be of no value in assessing Burrus' reaction to his criminal act.[6]

The defendant's offer of proof thus failed to establish: 1) that Dr. Jackson has personally observed the alleged effect of immediate post-crime trauma on intoxicated persons; 2) that he has read any scientific literature, or treatises or conducted any research or tests dealing with the problem; or 3) that the purported experiences of the people Dr. Jackson has allegedly treated are relevant to the particular circumstances of Burrus' case. The offer of proof therefore failed to demonstrate that Dr. Jackson has any specialized knowledge from experience, research, knowledge or training in this area to even hope to qualify him as an expert regarding the effect of the alleged immediate post-crime trauma experienced by Burrus when Burrus claims to have been so intoxicated that he was "utterly incapable of forming the intent requisite to the commission of the crime [of first degree murder]." *Guiden*, 174 N.W.2d at 490. "If the court or jury is able to draw its own conclusion without the

assistance of expert opinion, admission of such testimony is not only unnecessary but improper." *Valiga v. National Food Co.*, 58 Wis.2d 232, 206 N.W.2d 377, 388 (1973). Since Burrus' offer of proof failed to establish any specialized knowledge, training or experience that would assist the jury, I agree with the trial court that Burrus failed to demonstrate that Dr. Jackson is any more qualified than "a lay person" to evaluate the alleged effect of trauma on intoxicated individuals.

Finally, the record fails to reveal that the defense counsel provided either the state or the federal courts with one scintilla of medical or scientific data much less case law nor has our research discovered any medical or scientific literature even addressing, much less supporting the alleged theory advanced by the defense counsel and Dr. Jackson—that it is "usual" and "typical" for trauma to produce the appearance of sobriety in an extremely intoxicated individual. From my research, the "pie-in-the-sky" theory proposed by defense counsel, both trial and appellate, as well as by Dr. Jackson, has not been accepted to date as being scientifically or medically supportable by the American Psychiatric Association or any other accredited medical, scientific or legal body. Thus, Dr. Jackson's proposed testimony is nothing more than unsupported speculation from an individual unqualified as an expert on the effect of an alleged immediate post-crime trauma on a person under the influence of intoxicants; without specialized knowledge, training, education, reading, research, or testing, his title of psychiatrist alone fails to qualify him an expert in this highly speculative field of the effect of post-crime trauma on intoxicated persons. "It is the particular qualification of the witness in relation to the particular issue

---

removed it from her grasp, and subsequently used it to inflict the fatal blows upon her.

**6.** It is interesting to note in Burrus' confession that despite his allegedly intoxicated condition, Burrus had the presence of mind to drag the

victim's body to the other side of the basement before sexually assaulting her "because he wanted to get her away from the doorway [to the basement] to [sic] that nobody would be able to see him." Tr. 21: 86–89.

which should control, rather than the label of profession or trade." *Karl v. Employers Ins. of Wausau*, 254 N.W.2d at 261. Since Burrus' offer of proof failed to establish the admissibility of Dr. Jackson's testimony as an expert on post-crime trauma, it was entirely proper and certainly not error under the law of Wisconsin for the trial court to exclude Dr. Jackson's testimony.

As set forth above, the issue before us is whether the trial court's exclusion of Dr. Jackson's proffered testimony was a "gross" or "conspicuously prejudicial" error that fatally infected the trial and thus failed to afford Burrus fundamental fairness. Far from being "gross" or "conspicuously prejudicial" error as appellate defense counsel argued before this court, I believe that the trial court's exclusion of Dr. Jackson's testimony cannot reasonably be sustained as error under the law of Wisconsin, much less prejudicial error rising to the level of a constitutional violation. Because I am convinced that the trial court did not commit error in excluding the proffered alleged expert testimony, I conclude that the question of harmless error need not be discussed. The remaining legal question is whether the proper exclusion of expert testimony on the alleged "sobering effects of trauma" violated the defendant's constitutional right to a fair trial and thus requires this court to reverse the district court's decision denying the defendant's petition for a writ of habeas corpus.

The Wisconsin Supreme Court ruled that psychiatric testimony as to the capacity to form criminal intent is not admissible on the question of guilt or innocence in *Steele v. State*, 97 Wis.2d 72, 294 N.W.2d 2 (1980). In *Steele* the defendant appealed on the ground that the trial court erred when it excluded from the guilt phase of his trial expert opinion testimony that the defendant lacked the mental capacity to form the

intent to kill his wife. The court noted that "there is substantial doubt in respect to the trustworthiness and reliability of psychiatric testimony." *Id.* at 95, 294 N.W.2d 2.

"While some courts may have blind faith in all phases of psychiatry, this court does not. There is substantial doubt whether evidence such as what is sought to be introduced here is scientifically sound, and there is substantial legal doubt that it is probative on the point for which it was asserted in this case. We commented in an earlier case that this court has frequently been dismayed by the examination of trial court records which showed a marked propensity of those who purport to have psychiatric *expertise to tailor their testimony to the particular client whom they represent. State, ex rel. LaFollete v. Raskin*, 34 Wis.2d at [607] 622 [150 N.W.2d 318 (1967)], quoting *Jesner v. State*, 202 Wis. 184, 187, 231 N.W. 634 (1930). Nor are we convinced that even cross-examination in this esoteric and largely-unproved field is likely to reveal the truth."

*Id.* at 97, 294 N.W.2d 2 (emphasis added). The court concluded that "under the present state of law, the proffered evidence is neither competent, relevant, nor probative for the purpose asserted in the instant case," *id.*, and held that the trial court properly excluded the expert opinion testimony. The 1980 decision in *Steele* undercuts the earlier reasoning and assumptions of this court in *Hughes v. Mathews*, 576 F.2d 1250 (7th Cir.), *cert. denied sub nom. Israel v. Hughes*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978), where this court assumed that psychiatric testimony on the issue of the capacity to form a specific intent, "is generally considered competent evidence" under Wisconsin law. *Id.* at 1258.[7]

---

7. *See Flattum* discussion dealing with the required proper qualification of psychiatric experts, *infra* at 594.

In *State v. Flattum*, 122 Wis.2d 282, 361 N.W.2d 705 (1985), the Wisconsin Supreme Court distinguished between psychiatric opinion testimony that is based on a defendant's "mental health history" and psychiatric opinion testimony which purports to causally link a defendant's intoxication to a lack of capacity to form the requisite criminal intent. The court noted that in contrast to the uncertainty and unreliability of psychiatric testimony based on a defendant's mental health history, "the causal link between the physical state of intoxication and the capacity to intend is understood and was specifically recognized in *Steele*." 122 Wis.2d at 295, 361 N.W.2d 705. The court concluded that "because of its susceptibility to objective demonstration and to lay understanding, expert opinion testimony which speaks exclusively to the effect of intoxication on specific intent is competent evidence." *Id.* at 296, 361 N.W.2d 705. Thus, the court held that "a psychiatrist, properly qualified as an expert on the effects of intoxicants, may render an expert opinion as to whether a defendant's voluntary intoxicated condition negatived the defendant's capacity to form the requisite intent, but only if that opinion is based solely on the defendant's voluntary intoxicated condition." *Id.* at 297, 361 N.W.2d 705. Although the court in *Flattum* concluded that expert opinion testimony on the effect of intoxication on specific intent is competent, the court specifically limited its holding to those situations where the testifying psychiatrist is "properly qualified as an expert on the effects of intoxicants." If the rule in *Flattum*,[8] had been in effect at the time of Burrus' trial, a psychiatrist who had been properly qualified as an expert on the effects of intoxicants could have testified in this trial as to the effect of intoxication on Burrus' mental capacity provided he was able to testify as to the degree of intoxication or lack of capacity to form the specific intent to murder, but not as to the purported theory of the effect of the alleged immediate post-crime trauma that has not been shown to have a basis in medical or scientific research or the legal decisions of any court.

In *Steele v. Israel*, 571 F.Supp. 1208 (E.D.Wis.1983), *aff'd*, 745 F.2d 61 (7th Cir. 1984), the defendant whose conviction was affirmed in *Steele v. State*, 97 Wis.2d 72, 294 N.W.2d 2 (1980), filed a petition for a writ of habeas corpus. The district court denied the writ, holding that the petitioner had not been denied due process of law by the Wisconsin trial court's exclusion of psychiatric evidence on the issue of the petitioner's capacity to form specific intent in view of the Wisconsin Supreme Court's holding in *Steele v. State* that psychiatric evidence on the issue of capacity to form specific intent is both incompetent and irrelevant for that purpose. *Steele v. Israel*, 571 F.Supp. at 1211–12. In the present case, Burrus, as pointed out earlier in this opinion, failed to demonstrate that Dr. Jackson was qualified as an expert on the effect of the immediate post-crime trauma on an intoxicated individual via his offer of proof, and thus failed to establish Dr. Jackson's competence to testify at his trial. Moreover, the defendant's offer of proof concerning the doctor's qualifications failed to establish Dr. Jackson's knowledge as to the extent of Burrus' intoxication and therefore was unable to testify to a causal link between the intoxication and Burrus' capacity to form the required criminal intent. Therefore, I believe, as did the district court in *Steele v. Israel*, that it is not a denial of due process to exclude psychiatric evidence which is properly determined not to be competent. *See also Hughes v. Mathews*, 576 F.2d 1250, 1256 n. 13 (7th Cir.), *cert. denied sub nom., Israel v. Hughes*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978) ("rules which exclude

---

8. Burrus was convicted by the jury on December 4, 1981. *Flattum* was not decided until 1985.

relevant evidence which is not competent are permissible"). Since I believe the trial court's exclusion of Dr. Jackson's testimony was not improper, Burrus was not deprived of his due process right and therefore the exclusion of the testimony does not provide a basis for issuance of a writ of habeas corpus.

Even though my colleagues in the Majority also do not agree with me in this aspect of my concurrence, I seriously question the propriety of the attempts by Burrus' counsel, both at the trial level and on appeal, to argue what is at best a highly speculative and unrecognized supposed medical theory concerning the alleged sobering effects of post-crime trauma, thereby wasting the valuable time of this court and every other court that has heard this case, now four in number. This case provides a very classic example of why courts are becoming very suspect of the discipline of psychiatry and why many judges feel that the psychiatrist should be banned from the guilt or innocence phase of the trial, and if they are to be of any service to the court, their opinion and conclusions may conceivably be of value only at the sentencing stage after trial. The concern expressed by the Wisconsin Supreme Court in *Steele v. State*, provides a perfect illustration:

"While some courts may have blind faith in all phases of psychiatry, this court does not. There is substantial doubt whether evidence such as was sought to be introduced here is scientifically sound, and there is substantial legal doubt that it is probative on the point for which it was asserted in this case. We commented in an earlier case that this court has frequently been dismayed by the examination of trial court records which showed *a marked propensity of those who purport to have psychiatric expertise to tailor their testimony to the particular client whom they represent. State ex rel. La Follette v. Raskin*, 34 Wis.2d at 622, 150 N.W.2d 318, quoting *Jessner v. State*, 202 Wis. 184, 187, 231 N.W. 634 (1930)."

97 Wis.2d at 97, 294 N.W.2d at 13. This court has made clear its position concerning the responsibility of counsel to "represent his client within the existing structure of the law, and not some imagined version of it." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986) (opinion joined by Cummings, Circuit Judge). See also *Trecker v. Scag*, 747 F.2d 1176 (7th Cir.1984) (opinion by Cummings, Circuit Judge.) In view of defense counsels' failure to present any medical, legal or scientific evidence in support of the sobering effects of post-crime trauma theory, I question whether counsel for Burrus have fulfilled their responsibility to this court.

## III

In concurring in the denial of the defendant's petition for a writ of habeas corpus, I write singly in order to correct the error this court made in *Hughes v. Mathews*, 576 F.2d 1250 (7th Cir.1978) concerning the admissibility of psychiatric testimony under Wisconsin law and because I am convinced that the trial court's action excluding the alleged expert testimony on the sobering effects of post-crime trauma was proper and therefore the defendant has failed to establish any violation of his constitutional rights.